1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON, AT TACOMA

10

KEVIN SELKOWITZ, an individual,

No.:

11

Plaintiff,

12

v.

DEFENDANT QUALITY LOAN SERVICES
CORPORATION OF WASHINGTON'S
NOTICE OF REMOVAL

13
14
15
16
17
18
19
20

LITTON LOAN SERVICING, LP, a Delaware
Limited Partnership; NEW CENTURY
MORTGAGE CORPORATION, a California
corporation; QUALITY LOAN SERVICE
CORPORATION OF WASHINGTON, a
Washington corporation; FIRST AMERICAN
TITLE INSURANCE COMPANY, a
Washington corporation; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., a Delaware Corporation, and DOE
DEFENDANTS 1-20,

Defendants.

21
22
23

TO THE CLERK OF THE ABOVE ENTITLED COURT:

24

PLEASE TAKE NOTICE that defendant Quality Loan Service Corporation of

25

Washington ("QLS") hereby removes this action from the Superior Court of Washington, King

26

County (hereinafter the "State Court Action"), to the United States District Court for the Western

27
28

Notice of Removal
Page 1
MH #WA10-6195

District of Washington at Seattle, pursuant to 28 U.S.C. §§ 1441 and 1446, on the following grounds:

1.      QLS is a defendant in a civil action brought against it in the Superior Court of Washington, King County, entitled: *Kevin Selkowitz V. Litton Loan Servicing, LP, etc., et al.,* Case No. 10-2-24157-4 KNT.

2.      The Superior Court Case Summary located via the Washington Courts webpage shows that the State Court Action was commenced when the Complaint was filed in King County on July 2, 2010. A true and accurate copy of the docket report taken from the Superior Courts website on July 26, 2010 is included as **Exhibit A.**

3.      QLS was served with Summons and Complaint on or about July 6, 2010. On information and belief, no party was served with Summons and Complaint prior to July 6, 2010.

4.      On July 13, 2010, counsel for co-defendant First American Title Insurance Company ("FATIC") filed a Notice of Appearance. As of July 26, 2010, no other party has filed a Notice of Appearance. Counsel for QLS has spoken with counsel for Defendants Litton Loan Servicing, LP ("Litton") and Mortgage Electronic Registration Systems, Inc., ("MERS") and understands that said defendants will be represented by Attorney Heidi Buck of Routh Crabtree Olsen.

5.      This Notice of Removal is timely under 28 U.S.C. § 1446(b), as it is being filed within thirty days of service of the Complaint. A copy of the complaint is included as **Exhibit B.** All additional records and proceedings in the State Court shall be filed together with the Verification of State Court Records as required by 28 U.S.C. §1446(a) and Local Civil Rule 101(b) for the Western District of Washington.

6.      The Complaint alleges causes of action under the Fair Debt Collection Practices Act, 15 U.S.C §§ 1962, et seq. This action may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(b) because it is a civil action founded on a claim or right arising under the laws of the United States, and this action is removable without regard to the citizenship or residence of the parties.

McCarthy & Holthus LLP
19735 10th Ave NE, Suite N-200
Poulsbo WA 98370
PH: (206) 319-9100
FAX: (206) 780-6862

7.    Removal is proper to the Western District of Washington at Seattle because the district and division embrace King County, Washington.

8.    The State law claims asserted by Plaintiffs in their Complaint relate to and arise from the same nucleus of operative facts as the federal question. The State law claims do not raise novel or complex State law issues, and do not substantially predominate over the federal claim. Accordingly, pursuant to 28 U.S.C. §§ 1367(a) and 1441(c), this Court has supplemental jurisdiction to hear and decide all claims asserted by Plaintiffs in the Complaint.

9.    On July 22, 2010, counsel for QLS conferred with counsel for co-defendants Litton and MERS regarding removal. On July 23, 2010, counsel for QLS conferred with counsel for co-defendant FATIC regarding removal. Counsel for Litton and MERS and counsel for FATIC advised counsel for QLS that they consented on behalf of their clients to the removal. Based thereon, counsel for QLS avers that all defendants who have appeared or are anticipated to appear in this action consent to the removal. *Proctor v. Vishay Intertechnology Inc.,* 584 F.3d 1208 (9th Cir. Cal. 2009)

10.    Written notice of the filing of this Notice of Removal will be given to the plaintiffs and to co-defendants FATICA, Litton and MERS. A copy of this Notice of Removal and supporting papers will be filed with the Clerk of the State Court as provided by 28 U.S.C. § 1446(d).

11.    This notice is signed pursuant to FRCP, Rule 11.

WHEREFORE,  Defendant Quality Loan Service Corporation of Washington prays that the above described action pending against it in the State Court be removed to this Court.


Dated: July 27, 2010                                    MCCARTHY & HOLTHUS, LLP


___/S/__Mary Stearns_____
Mary Stearns, Esq., WSBA #42543
Attorneys for Defendant Quality Loan
Service Corporation of Washington

McCarthy & Holthus LLP
19735 10th Ave NE, Suite N-200
Poulsbo  WA  98370
PH: (206) 319-9100
FAX: (206) 780-6862

### CERTIFICATE OF SERVICE

I certify that on July 27, 2010, I served a copy of the foregoing document in the manner specified on the following:

| | |
|---|---|
| Heidi E. Buck<br>Routh Crabtree Olsen, P.S.<br>3535 Factoria Blvd S.E., Suite 200<br>Bellevue, WA 98006<br>hbuck@rcolegal.com<br>**Attorney for Defendant Litton Loan Servicing, LP and Mortgage Electronic Registration Systems, Inc.** | ☐ Hand Delivery<br>X First Class Mail<br>X Electronic Mail [via efiling]<br>☐ Facsimile<br>☐ Process Server<br>☐ Federal Express |
| Kennard M. Goodman<br>Ann T. Marshall<br>Bishop, White, Marshall & Weibel, P.S.<br>720 Olive Way, Suite 1301<br>Seattle, WA 98101<br>**Attorney for Defendant First American Title Insurance Company** | ☐ Hand Delivery<br>X First Class Mail<br>X Electronic Mail [via efiling]<br>☐ Facsimile<br>☐ Process Server<br>☐ Federal Express |
| Richard Llewelyn Jones<br>Richard Llewelyn Jones, P.S.<br>2050 112th Avenue N.E.<br>Bellevue, WA 98004<br>**Attorney for Plaintiff** | ☐ Hand Delivery<br>X First Class Mail<br>X Electronic Mail [via efiling]<br>☐ Facsimile<br>☐ Process Server<br>☐ Federal Express |

I declare under penalty of perjury under the laws of the Unites States of America and the State of Washington that the foregoing is true and correct and that this Declaration was executed in Poulsbo, Washington.

Dated: July 27, 2010

_signature_

Melissa Rice,  Legal Assistant
McCarthy & Holthus, LLP

McCarthy & Holthus LLP
19735 10th Ave NE, Suite N-200
Poulsbo  WA  98370
PH: (206) 319-9100
FAX: (206) 780-6862

# Exhibit A





**Courts Home | Search Case Records**

Search | Site Map | eService Center

Home | Summary Data & Reports | Resources & Links | Get Help

# Superior Court Case Summary

**Court:** King Co Superior Ct
**Case Number:** 10-2-24157-4

| Sub | Docket Date | Docket Code | Docket Description | Misc Info |
|-----|-------------|-------------|--------------------|-----------|
| 1 | 07-02-2010 | COMPLAINT | Complaint For Temporary Restraining Order & Permanent Injunction | |
| 2 | 07-02-2010 | SET CASE SCHEDULE JDG0038 | Set Case Schedule Judge Richard Mcdermott, Dept 38 | 12-19-2011ST |
| 3 | 07-02-2010 | CASE INFORMATION COVER SHEET LOCK | Case Information Cover Sheet Original Location - Kent | |
| 4 | 07-02-2010 | SUMMONS | Summons | |
| 5 | 07-02-2010 | NOTICE | Notice Re Default | |
| 6 | 07-13-2010 | NOTICE OF APPEARANCE | Notice Of Appearance /first America | |

## About Dockets

You are viewing the case docket or summary. Each Court level uses dif terminology for this information, bu court levels, it is a list of activities c documents related to the case. Dist municipal court dockets tend to incl case details, while superior court dc themselves to official documents ar related to the case.

If you are viewing a district municip appellate court docket, you may be see future court appearances or cal dates if there are any. Since superio generally calender their caseloads c systems, this search tool cannot dip superior court calendering informat

### Contact Information

King Co Superior Ct
516 3rd Ave, Rm C-203
Seattle, WA 98104-2361
**Map & Directions**
206-296-9100[Phone]
206-296-0986[Fax]
**Visit Website**
206-205-5048[TDD]

### Disclaimer

This information is provided for use reference material and is <u>not</u> the of record. The official court record is n by the **court of record**. Copies of c documents are not available at this and will need to be ordered from th **record**.

The Administrative Office of the Cou Washington State Courts, and the V State County Clerks :

1) Do not warrant that the informat accurate or complete;

2) Do not guarantee that informatic

most current form;

3) Make no representations regardi
identity of any person whose name
on these pages; and

4) Do not assume any liability resul
the release or use of the informatio

Please consult official case records
**court of record** to verify all provid
information.

**Courts** | **Organizations** | **News** | **Opinions** | **Rules** | **Forms** | **Directory** | **Library**
**Back to Top** | **Privacy and Disclaimer Notices**

# Exhibit B

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| KEVIN SELKOWITZ, an individual,<br><br>                        Plaintiff<br><br>v.<br><br>LITTON LOAN SERVICING LP, a Delaware Limited Partnership; NEW CENTURY MORTGAGE CORPORATION, a California Corporation; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington Corporation ; FIRST AMERICAN TITLE INSURANCE COMPANY, a Washington Corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE Defendants 1-20,<br>                        Defendants. | NO.  10-2-24157-4 KNT<br><br>**SUMMONS**<br><br><br><br><br><br>*(Clerk's Action Required)* |

**TO THE ABOVE-NAMED DEFENDANTS:**

    A lawsuit has been started against you in the above-entitled court by KEVIN SELKOWITZ, Plaintiff.  Plaintiff's claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

    If you were served with this Summons and Complaint **within** the State of Washington, then in order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons with 20 days

SUMMONS - Page 1

RICHARD LLEWELYN JONES, P.S.<br>ATTORNEY AT LAW<br>2050 – 112th Avenue N.E.<br>Suite 230<br>Bellevue, Washington 98004<br>(425) 462-7322

by stating your defense in writing, and by serving a copy upon the person signing this Summons with 20 days after the service of this Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what he asks for because you have not responded. If you serve a Notice of Appearance on the undersigned person, you are entitled to Notice before a default judgment may be entered.

If you were served with this Summons and Complaint outside the State of Washington, then in order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons with 60 days after service of this Summons and Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons within 60 days after the service of this Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what he asks for because you have not responded. If you serve a Notice of Appearance on the undersigned person, you are entitled to Notice before a default judgment may be entered.

You may demand that the Plaintiff(s) file this lawsuit with the Court. If you do so, the demand must be in writing and must be served upon the person signing this Summons. Within 14 days after you serve the demand, the Plaintiff(s) must file this lawsuit wit the Court, or the service on you of this Summons and Complaint will be void.

If you wish to seek the advise of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this _____ day of June, 2010.

RICHARD LLEWELYN JONES, P.S.

By _____
Richard Llewelyn Jones, WSBA #12904
Attorneys for Plaintiff

SUMMONS - Page 2

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 - 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1
2
3
4
5

6          IN THE SUPERIOR COURT FOR THE COUNTY OF KING
                          STATE OF WASHINGTON

7

| KEVIN J. SELKOWITZ, an individual, | NO. 10-2-24157-4 KNT |
|---|---|
| Plaintiff | |
| v. | COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION; ACTION TO QUIET TITLE; WRONGFUL FORECLOSURE; LIBEL/DEFAMATION OF TITLE; MALICIOUS PROSECUTION; VIOLATION OF THE TRUTH IN LENDING ACT 15 U.S.C. § 1601, *et seq.*; VIOLATION OF THE CONSUMER PROTECTION ACT, RCW 19.86, ET. SEQ.; VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §§ 1962, *et seq.* |
| LITTON LOAN SERVICING LP, a Delaware Limited Partnership; NEW CENTURY MORTGAGE CORPORATION, a California Corporation; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington Corporation ; FIRST AMERICAN TITLE INSURANCE COMPANY, a Washington Corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE Defendants 1-20, | |
| Defendants. | *(Clerks Action Required)* |

16        **COMES NOW** the Plaintiff, KEVIN SELKOWITZ, by and through his attorneys,

17   RICHARD LLEWELYN JONES, P.S., and files this Complaint against the Defendants hereby

18   alleging as follows:

19                              **I. PARTIES**

20        1.1   *Plaintiff.*   Plaintiff, KEVIN SELKOWITZ, is now and was at all times herein

21   mentioned a resident in Bellevue, King County, Washington.   Said Plaintiff is the owner of

22   certain real property, situated in King County, state of Washington, legally described as follows:

COMPLAINT
Page 1

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

Unit 4, Building 2-6 of Lakemont Ridge, a Condominium recorded in volume 125 of Condominiums, pages 6 through 14, according to the declaration thereof, recorded under King County Recording Number 9506140732 and any amendments thereto; Situate in the City of Bellevue, County of King, State of Washington.

Commonly known as: 6617 Southeast Cougar Mountain Way, Bellevue, WA 98006 (hereinafter "the Property").

1.2   *Defendant Litton Loan Servicing LP.*   LITTON LOAN SERVICING, LP, is a limited partnership, organized under the laws of the state if Delaware, conducts businesses within the State of Washington and has a registered agent in Tumwater, Thurston County, Washington.   This Defendant is hereinafter referred to as "Litton".

1.3   *Defendant New Century Mortgage Corporation.*   NEW   CENTURY MORTGAGE CORPORATION was a corporation organized under the laws of the State of California that provided sub-prime home mortgage loans and refinancing services and had a business address in Irvine, Orange County, California and at all times relevant to this cause of action has conducted businesses within the State of Washington.   This Defendant is hereinafter referred to as "New Century".

1.4   *Defendant Quality Loan Service Corporation of Washington.*   QUALITY LOAN SERVICE CORPORATION is a Washington corporation which acts as a foreclosing trustee in connection with foreclosing on deeds of trust secured by real property located in King County, Washington and in other counties within the State of Washington and has a registered agent address in Poulsbo, Washington.   This Defendant is hereinafter referred to as "QLS".

1.5   *Defendant First American Title Insurance Company.*   FIRST AMERICAN TITLE INSURANCE COMPANY is, upon information and belief, a title insurance company operating in the State of Washington. This Defendant is hereinafter referred to as "FATCO".

COMPLAINT
Page 2

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1.6   *Defendant Mortgage Electronic Registration Systems, Inc.*   MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., is an inactive Washington corporation. This Defendant is hereinafter referred to as "MERS".

1.7   *Doe Defendants 1-20.*   Doe Defendants 1-20 were at all times mentioned herein, the Defendants, and each of them, were the principals, successors or assigns, agents, servants, representatives and/or employees of each of the remaining Defendants and were acting within the course and scope of such agency or employment. The exact terms and conditions of any succession, assignment, agency, representation or employment relationships are presently unknown to Plaintiff, but when the information is ascertained, leave of court will be sought to insert the appropriate allegations.

1.8   No party named herein is a minor, in the military service of the United States, as defined by the Soldier's and Sailor's Relief Act of 1942, as subsequently amended and re-codified under the Service members Civil Relief Act, or otherwise incompetent.

1.9   At all time relevant to this cause of action, the above-named Defendants acted for and on behalf of themselves, each other and, where appropriate, their respective martial communities.

## II. JURISDICTION AND VENUE

2.1   This court has jurisdiction and venue is properly laid with this court because this action involves title to certain real property located in King County, Washington.

## III. FACTS

3.1   Plaintiff executed a Deed of Trust on November 1, 2006, with Defendant FATCO as trustee, naming MERS as purported beneficiary; the lender was identified as New Century

COMPLAINT
Page 3

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW.
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1   Mortgage Corporation. This instrument was recorded in King County under Recordation No.

2   20061101000910, encumbering the Property. A true and correct copy of said deed of trust is

3   attached here and incorporated herein by this reference as *Exhibit "A"*.

4        3.2   As of November 1, 2006, and subsequently at all times thereafter, the Plaintiff

5   owed to MERS no monetary or other obligation under the terms of any promissory note or other

6   evidence of debt executed contemporaneously with the deed of trust referenced in paragraph 3.1.

7        3.3   On May 12, 2010, Defendant MERS executed, as beneficiary of the security

8   instrument referenced in paragraph 3.1, an Appointment of Successor Trustee nominating

9   Defendant QLS as trustee. This instrument was recorded in King County under Recordation No.

10   20100520000866 on May 20, 2010. A true and correct copy of said Appointment of Successor

11   Trustee is attached here and incorporated herein by this reference as *Exhibit "B"*.

12        3.4   On May 27, 2010, Defendant QLS executed a Notice of Trustee's Sale in

13   connection with the Property. This instrument was recorded in King County under Recording

14   Number 20100601001460 on June 1, 2010. A true and correct copy of said notice is attached

15   here and incorporated herein by this reference as *Exhibit "C"*.

16        3.5   A search of the public records indicates that no assignment of the Deed of Trust

17   or Note has ever been recorded. Upon information and belief, MERS has never owned the debt

18   secured by the Deed of Trust at issue herein. Further, Defendant MERS never obtained

19   possession of the Promissory Note which secures the subject Deed of Trust.

## IV. CAUSE OF ACTION VIOLATION OF CONSUMER PROTECTION ACT

20        4.1   Plaintiff repeats and realleges each and every item and allegation above as if

21   fully and completely set forth herein.

22

COMPLAINT
Page 4

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2055 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 452-7322

4.2     Defendants Litton, New Century, FATCO, MERS and QLS have violated the Consumer Protection Act, *RCW 19.86, et seq.*, through a course of conduct in executing, recording and relying upon documents that it knew or should have known to be false and that have the capacity to deceive a substantial portion of the public.

4.3     In promulgating false and improperly executed documents Defendants are engaged in deceptive acts.

4.4     Defendant QLS violated provisions of *RCW 61.24* and *15 U.S.C. §1692*, per se violations of *RCW 19.86.*

4.5     Defendants have engaged in these activities as part of a normal course of business and commerce. Such activities are likely to be repeated affecting the people of the State of Washington.

4.6     The public interest is negatively impacted by the pattern of conduct engaged in by Defendants as evidenced by the repeated acts and obvious potential for repetition.

4.7     The Plaintiff has suffered injury as outlined above and below, in addition the distraction and loss of time to pursue business and personal activities due to the necessity of addressing the wrongful conduct through this and other actions. These injuries are solely the result of the conduct of the Defendants in this action.

4.8     Several named Defendants are jointly and severally liable as said Defendants knowingly executed and directed documents to Plaintiff or Defendant QLS at such time they knew or should have known contained false statements.

COMPLAINT
Page 5

RICHARD LLEWELYN JONES, P.S.

ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

## V. CAUSE OF ACTION VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

5.1     Plaintiff repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

5.2     Defendant Litton became a debt collector under the Fair Debt Collection Practices Act upon Defendant Litton's declaration alleging default by Plaintiff under the subject loan obligation.

5.2     Defendant QLS and Litton have violated the Act through their use of false and misleading representations as outlined above, in violation of §807 of the Fair Debt Collection Practices Act.

5.3     A threat to take nonjudicial action to dispossess the Plaintiff of his residence without a present right to possession by Defendant QLS, or any other named Defendant, is a violation of §808 (6) of the Fair Debt Collection Practices Act.

5.4     Several named Defendants are jointly and severally liable as said Defendants knowingly executed documents they knew or should have known contained false statements or seeking to take nonjudicial action to which they were not legally entitled.

## VI. CAUSE OF ACTION FOR LIBEL/DEFAMATION OF TITLE

6.1     Plaintiff repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

6.2     Defendant QLS made a false and defamatory statement against Plaintiff and the title to Plaintiff's property by recording and publishing a Notice of Trustee's Sale when it had no legal right to do so. Such action was not protected by any privilege, was the result of said Defendant's malicious, reckless or negligent conduct, had the potential effect of defeating

COMPLAINT
Page 6

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1  Plaintiff's title, and had a prejudicial effect upon Plaintiff's reputation and damaged his ability to

2  negotiate with third parties in addition to other damages.

3      6.3    Several named Defendants are jointly and severally liable as said Defendants

4  knowingly executed and directed documents to Plaintiff, third parties or Defendant QLS at such

5  time as they knew or should have known said documents contained false statements.

6      ## VII.   CAUSE OF ACTION FOR MALICIOUS PROSECUTION

7      7.1    Plaintiff repeats and realleges each and every item and allegation above as if

8  fully and completely set forth herein.

9      7.2    Defendant QLS embarked upon the above described course of conduct to

10  dispossess the Plaintiff of his residence with actual or imputed knowledge of the impropriety of

11  such action.  The Defendant had no basis for a reasonable belief that the actions taken were

12  proper.

13      7.3    These actions described above were taken in reckless disregard of the rights of

14  the Plaintiff and sought to seize and put up for sale the Plaintiff's property giving rise to the

15  damages and injuries herein described.

16      7.4    Several named Defendants are jointly and severally liable as said Defendants

17  knowingly executed and directed documents to Defendant QLS at such time they knew or

18  should have known said documents contained false statements.

      ## VIII.   CAUSE OF ACTION FOR WRONGFUL FORECLOSURE

19      8.1    Plaintiff repeats and realleges each and very item and allegation above as fully

20  and completely set forth herein.

21      8.2    Defendant MERS did not at the time of the deed of trust was executed, nor at

22  any subsequent time thereafter, meet the definition of "Beneficiary" under *RCW 61.24.005*.

COMPLAINT
Page 7

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1    Therefore MERS cannot ever have the right to foreclose under the Deed of Trust nor legally

2    assign such right, since that right is reserved to the owner and holder of the subject

3    Promissory Note. It is Plaintiff's contention, based upon the foregoing, that the subject

4    transaction is nothing more than a sham and therefore the appointment of QLS as successor

5    trustee by MERS was invalid.

6          8:3    *RCW 61.24.020* requires that only those deeds of trust that "secure the

7    performance of an obligation of the grantor or another **to the beneficiary** may be foreclosed

8    by trustee's sale." Plaintiff at no time was obligated to perform any obligation to MERS.

9          8.4    Defendants have violated the provisions of *RCW 61.24.*

10          8.5    Based upon the facts alleged herein the Defendants have engaged in a wrongful

11    foreclosure against the Plaintiffs for which the sale should be permanently enjoined.

12                    IX.    ACTION TO QUIET TITLE

13          9.1    The Plaintiff is the owner in fee, and is in possession of, the subject Property.

14          9.2    Plaintiff acquired his interest in the property by virtue of the events herein

15    described in that MERS was not a legitimate beneficiary under *RCW 61.24.005* and further that

16    several Defendants have engaged in transactions that have irreparably severed the promissory

17    note from the deed of trust.

18          9.3    Plaintiff has been in the actual and uninterrupted possession of the Property since

19    the dates previously set forth.

20                    X.    PRAYER FOR RELIEF

21          10.1    That judgment be entered against all of the Defendants, jointly and severally,

22    for all damages in an amount to be proven at the time of trial;

COMPLAINT
Page 8

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

10.2 That the actions of some or all of the Defendants be determined to be unfair and deceptive business practices in violation of *RCW 19.86, et seq.* and that this Court award all such relief to Plaintiff as they may be entitled, including treble damages and an award for costs and attorneys fees;

10.3 That the Plaintiff be awarded consequential damages, including attorney's fees incurred to bring this action and all other attorney's fees incurred in defending against the actions of the Defendants described more particularly above, in an amount to be proved at trial;

10.4 That the Plaintiff be awarded statutory damages available under any applicable statutes; including without limitation *15 U.S.C. §1692* or any other statutory basis that may emerge at trial.

10.5 That Plaintiff's title to the Property be established and quieted in him in fee simple, against any and all claims of the Defendants, or any of them;

10.6 That the Defendants, and each of them, be forever barred from having or asserting any right, title, estate, lien, or interest in or to the property herein described adverse to Plaintiff; and

10.7 That the Plaintiff have such other and further relief as may be just and equitable.

DATED this ___ day of June, 2010.

RICHARD LLEWELYN JONES, P.S.

Richard Llewelyn Jones, WSBA # 12904
Attorney for Plaintiff

COMPLAINT
Page 9

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2250 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

Exhibit A

Return To:
New Century Mortgage Corp.
Attn: Trailing Docs Department
210 Commerce
Irvine, CA  92602
Title Order No.: RO-20254555
Borrower #:4139800450
Assessor's Parcel or Account Number: 4139800450
Abbreviated Legal Description:UNIT 4, BUILDING 2-6, OF LAKEMONT RIDGE

[Include lot, block and plat or section, township and range]          Full legal description located on page 3
Trustee:First American Title Insurance Company
                                                 Additional Grantees located on page 2

_____[Space Above This Line For Recording Data]_____

# DEED OF TRUST.
MIN:100431900103955512

## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
(A) "Security Instrument" means this document, which is dated  October 30, 2006
together with all Riders to this document.
(B)"Borrower" is  KEVIN J. SELKOWITZ, an Unmarried Man .

Borrower is the trustor under this Security Instrument.
(C) "Lender" is NEW CENTURY MORTGAGE CORPORATION, a California Corporation.

320-10608372
WASHINGTON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3048  1/01

-6A(WA) (0012).03
Page 1 of 15          Initials: K/S
VMP MORTGAGE FORMS - (800)521-7291

Lender is a Corporation
organized and existing under the laws of California
Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA  92612

(D) "Trustee" is First American Title Insurance Company

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated October 30, 2006
The Note states that Borrower owes Lender Three Hundred Nine Thousand Six Hundred And 00/100                                                                              Dollars
(U.S. $309,600.00                ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than November 1, 2036
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify]: |

Addendum To ARM Rider & Int-Only Addendum-Arm Rider and

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
-320-10508372

Initials: [___]

(MERS)-6A(WA) (0012).03                     Page 2 of 15                                Form 3048  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the                 County              [Type of Recording Jurisdiction]
of            KING                         [Name of Recording Jurisdiction]:
UNIT 4, BUILDING 2-6 OF LAKEMONT RIDGE, A CONDOMINIUM RECORDED IN VOLUME
125 OF CONDOMINIUMS, PAGES 6 THROUGH 14, ACCORDING TO THE DECLARATION
THEREOF, RECORDED UNDER KING COUNTY RECORDING NUMBER 9606140732 AND ANY
AMENDMENTS THERETO; SITUATE IN THE CITY OF BELLEVUE, COUNTY OF KING,
STATE OF WASHINGTON.

Parcel ID Number: 4139800450                              which currently has the address of
6617 SOUTHEAST COUGAR MOUNTAIN WAY                                                   [Street]
BELLEVUE                                                 [City] , Washington 98006       [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances
320-10608372

Initials: [illegible]

-6A(WA) (0012).03                        Page 3 of 15                              Form 3048 1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community

320·18608372

Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to

320-10608372

-6A(WA) (0012).03          Page 6 of 15          Initials: ___     Form 3048 1/01

hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

320-10508372

@@-6A(WA) (0012).03          Page 7 of 15          Initials: [illegible]          Form 3048  1/01

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

320-1060B372

Initials: [signature]

Form 3048   1/01

-6A(WA) (0012).03

Page 8 of 15

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

320-10608372

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's

320-10608372

@-6A(WA) (0012).03          Page 10 of 15          Initials: _____          Form 3048 1/01

notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c)

320-10608372

®-6A(WA) (0012).03                    Page 11 of 15            Initials: KV          Form 3048  1/01

certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of

320-10608372

release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

24. Substitute Trustee. In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

320-10608372

-6A(WA) (0012).03                              Page 13 of 15                           Initials: _KV_      Form 3048  1/01

25. **Use of Property.** The Property is not used principally for agricultural purposes.

26. **Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
KEVIN J. SELKOWITZ                    -Borrower

_____

_____ (Seal)
                                      -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                                      -Borrower

320-10608372

-6A(WA) (0012).03                    Page 14 of 15                    Form 3048 1/01

STATE OF WASHINGTON
County of KING
On this day personally appeared before me   KEVIN J. SELKOWITZ, an Unmarried Man

}ss:

to me known to be the individual(s) described in and who executed the within and foregoing instrument,
and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the
uses and purposes therein mentioned.
    GIVEN under my hand and official seal this          day of October, 2006

Notary Public in and for the State of Washington, residing at

My Appointment Expires on

320-10508372

-6A(WA) (0012).03                    Page 16 of 16          Initials          Form 3048  1/01

MIN: 100431900103935572
Loan No.: 320-10608372

## PREPAYMENT RIDER
(Multi State)

This Prepayment Rider is made this 30th day of October , 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to NEW CENTURY MORTGAGE CORPORATION (the "Lender") of the same date and covering the property described in the Security Instrument and located at 5617 SOUTHEAST COUGAR MOUNTAIN WAY, BELLEVUE, WA 98006 (the "Property").

Additional Covenants. Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." A "full prepayment" is the prepayment of the entire unpaid principal due under the Note. A payment of only part of the unpaid principal is known as a "partial prepayment."

If, within the three (3)-year period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first zero (0) year(s) of the term of the Note, no prepayment penalty will be assessed. In that event, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____ (Seal)                    _____ (Seal)
KEVIN J. SELKOWITZ           Borrower                                           Borrower

_____ (Seal)                    _____ (Seal)
                             Borrower                                           Borrower

603B2 Multi-State Rider                    Page 1 of 1

MIN: 100431900103955512

# ADJUSTABLE RATE RIDER
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 30th    day of October, 2006
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
NEW CENTURY MORTGAGE CORPORATION

("Lender") of the same date and covering the property described in the Security Instrument
and located at: 6617 SOUTHEAST COUGAR MOUNTAIN WAY, BELLEVUE, WA  98006

(Property Address)

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of              6.375 %. The Note provides
for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may may change on the first day of November, 2011
and on that day every     sixth    month thereafter. Each date on which my interest rate
could change is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for six month U.S. dollar-denominated
deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most
recent Index figure available as of the first business day of the month immediately preceding
the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based
upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
two and one-quarter                                          percentage points
(        2.250 %) to the Current Index. The Note Holder will then round the result of
320-10608372

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN
THE WALL STREET JOURNAL) - Single Family - Fannie Mae Uniform Instrument

-838R (0402) Form 3138 1/01
Page 1 of 3     Initials: _____
VMP Mortgage Solutions, Inc.
(800)521-7291

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than 12.375 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.375 %.

(E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

320-10608372

VMP®-838R (0402)                Page 2 of 3               Initials: KV                Form 3138 1/01

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
KEVIN J. SELKOWITZ                  -Borrower                                               -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                               -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                               -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                               -Borrower

320-10608372

-838R (0402)                        Page 3 of 3                        Form 3138 1/01

## ADDENDUM TO ADJUSTABLE RATE RIDER

Loan No: 320-10608372
MIN: 100431900103955512

This addendum is made October 30, 2006 and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:

6617 SOUTHEAST COUGAR MOUNTAIN WAY
BELLEVUE, WA 98006

### AMENDED PROVISIONS

In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

### ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 12.375 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than 12.375 %. My interest rate will never be less than 2.250 %.

### TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums, prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

1202 LIBOR Addendum to Rider 7/01          Page 1 of 2

Loan No: 320-10608373

In Witness Thereof, Trustor has executed this addendum.

Witness

October 30, 2006
Date

Borrower KEVIN J. SELKOWITZ

October 30, 2006
Date

Borrower

October 30, 2006
Date

Borrower

October 30, 2006
Date

Borrower

1202 LIBOR Addendum to Rider 1/01        Page 2 of 2

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

LOAN NUMBER: 320-10608372                    MIN: 100431900103955512
PROPERTY ADDRESS: 6617 SOUTHEAST COUGAR MOUNTAIN WAY, BELLEVUE, WA 98006

THIS ADDENDUM is made this 30th day of October , 2006 , and is incorporated into and intended to form a
part of the Adjustable Rate Rider (the "Rider") the same date as this Addendum executed by the undersigned and
payable to NEW CENTURY MORTGAGE CORPORATION, a California Corporation. (Lender).

THIS ADDENDUM supersedes Section 4(C) of the Rider. None of the other provisions of the Note are changed
by this Addendum.

4.      INTEREST RATE AND MONTHLY PAYMENT CHANGES .

        (C) Calculation of Changes

        Before each Change Date, the Note Holder will calculate my new interest rate by adding two and one-quarter
percentage points (2.250 %) to the Current Index for such Change Date. The Note Holder will then round the result
of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section
4(D), this rounded amount will be my new interest rate until the next Change Date.

        During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that
would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of
the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal
during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment
amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest
rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the
Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid
principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal
monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my
monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to
voluntary prepayments.

Dated: October 30, 2006

_____
Borrower   KEVIN J.  SKLRONITH                    Borrower   _____

Form 603F                           Page 1 of 1                            1/01

MIN: 100431900103955513

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 30th    day of October, 2006
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to NEW CENTURY MORTGAGE
CORPORATION, a California Corporation.
                                                                                    (the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

        6517 SOUTHEAST COUGAR MOUNTAIN WAY, BELLEVUE, WA  98006
                              [Property Address]
The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:
                              LAKEMONT RIDGE
                          [Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
    A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.
    B. Property Insurance. So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

320-10608372

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
-8R (0405).01   Form 3140 1/01
Page 1 of 3          Initials: K V
VMP Mortgage Solutions, Inc.
(800)521-7291

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

320-10608372

-6R (0405).01                      Page 2 of 3                       Form 3140 1/01

Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained
in this Condominium Rider.

_____ (Seal)          _____ (Seal)
KEVIN J. SELKOWITZ       -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower


320-10608372

8R (0405).01                    Page 3 of 3                  Form 3140 1/01

Exhibit B

Electronically Recorded

**20100520000866**

SIMPLIFILE                                           AST  15.00
Page 001 of 002
05/20/2010 02:36
King County, WA

When recorded return to:

Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101

Space above this line for recorders use only

TS # WA-10-357584-SH          Order # 100254607-WA-GSI
APN: 413980045004
MERS MIN No.:                                        Investor No. 10608372
100431800103955512

## Appointment of Successor Trustee

NOTICE IS HEREBY GIVEN that QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a corporation formed under RCW 61.24, whose address is 2141 5th Avenue  San Diego, CA 92101 is hereby appointed Successor Trustee under that certain Deed of Trust dated 10/30/2006, executed by KEVIN J. SELKOWITZ , AN UNMARRIED MAN as Grantor, in which FIRST AMERICAN TITLE INSURANCE COMPANY was named as Trustee, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NEW CENTURY MORTGAGE CORPORATION, A CALIFORNIA CORPORATION A CORPORATION as Beneficiary, and recorded on 11/1/2006, under Auditor's File No. 20061101000910 as book xxx and page xxx  Official Records.  Said real property is situated in KING County, Washington and is more particularly described in said Deed Of Trust.

IN WITNESS WHEREOF, the Beneficiary, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., has hereunto set his hand; if the undersigned is a corporation, it has caused its corporate name to be signed and affixed hereunto by its duly authorized officers.

Page 1

Appointment of Successor Trustee
TS # WA-10-357584-SH
Page 2

Dated: MAY 1 2 2010

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____

Debra Lyman          Vice President

State of Texas   )
County of Harris  )

MAY 1 2 2010
On _____, personally appeared _____ Debra Lyman _____ of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., the corporation that executed this document. He/She acknowledged that executing this document was his/her free and voluntary act and that he/she is authorized to execute this document.

Witness my hand and official seal hereto affixed this day and year.

_____
Brenda McKinzy          Notary Public
Notary Public in and for the State of _____ Texas _____
My Commission expires: 12-5-10

BRENDA MCKINZY
Notary Public, State of Texas
My Commission Expires
December 05, 2010

Exhibit C

RECEIVED

JUN 1 4 2010

RICHARD LLEWELYN JONES, P.S.

RECORDING REQUESTED BY
Litton Loan Servicing LP
4828 Loop Central Drive
Houston, TX 77081

AND WHEN RECORDED MAIL TO:
Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 413980045004

TS No: WA-10-357584-SH

## NOTICE OF TRUSTEE'S SALE
### PURSUANT TO THE REVISED CODE OF WASHINGTON
### CHAPTER 61.24 ET. SEQ.

I.     NOTICE IS HEREBY GIVEN that Quality Loan Service Corp. of Washington, the undersigned Trustee, will on 9/3/2010, at 10:00 AM at the 4th Ave. entrance to the King County Administration Building, 500 4th Avenue, Seattle, WA 98104 sell at public auction to the highest and best bidder, payable, in the form of cash, or cashier's check or certified checks from federally or State chartered banks, at the time of sale the following described real property, situated in the County of KING, State of Washington, to-wit:

UNIT 4, BUILDING 2-6 OF LAKEMONT RIDGE, A CONDOMINIUM RECORDED IN VOLUME 125 OF CONDOMINIUMS, PAGES 6 THROUGH 14, ACCORDING TO THE DECLARATION THEREOF, RECORDED UNDER KING COUNTY RECORDING NUMBER 9506140732 AND ANY AMENDMENTS THERETO: SITUATE IN THE CITY OF BELLEVUE, COUNTY OF KING, STATE OF WASHINGTON

Commonly known as:
6617 Southeast Cougar Mountain Way
Bellevue, WA 98006

which is subject to that certain Deed of Trust dated 10/30/2006, recorded 11/1/2006, under Auditor's File No. 20061101000910, in Book xxx, Page xxxrecords of KING County, Washington, from KEVIN J. SELKOWITZ, AN UNMARRIED MAN, as Grantor(s), to FIRST AMERICAN TITLE INSURANCE COMPANY, as Trustee, to secure an obligation in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NEW CENTURY MORTGAGE CORPORATION, A CALIFORNIA CORPORATION A CORPORATION, as Beneficiary.

II.     No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any Court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust/Mortgage.

III.     The default(s) for which this foreclosure is made is/are as follows:

Failure to pay when due the following amounts which are now in arrears: $15,421.00

SENT TO CLIENT 6/14/10  SR
( ) NO ACTION REQUIRED
( ) PLEASE RESPOND TO THIS



T.S. No.: WA-10-357584-SH

IV.    The sum owing on the obligation secured by the Deed of Trust is:  The principal sum of $309,600.00, together with interest as provided in the Note from the 11/1/2009, and such other costs and fees as are provided by statute.

V.    The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on 9/3/2010. The defaults referred to in Paragraph III must be cured by 8/23/2010 (11 days before the sale date) to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before 8/23/2010 (11 days before the sale) the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid. Payment must be in cash or with cashier's or certified checks from a State or federally chartered bank. The sale may be terminated any time after the 8/23/2010 (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust.

VI.    A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

NAME                                    ADDRESS
KEVIN J. SELKOWITZ, AN UNMARRIED        6617 Southeast Cougar Mountain Way
MAN                                     Bellevue, WA 98006

by both first class and certified mail on 4/26/2010, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.    The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.    The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above-described property.

IX.    Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.    NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

**If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

T.S. No.: WA-10-357584-SH

DATED: 5/27/2010

*Sarina Castaneda*

Quality Loan Service Corp. of Washington, as Trustee
By: Sarina Castaneda, Assistant Secretary

For Non-Sale, Payoff and Reinstatement info
Quality Loan Service Corp of Washington
2141 Fifth Avenue
San Diego, CA 92101
(866) 645-7711
Sale Line: 714-730-2727 or Login to:
www.fidelityasap.com

For Service of Process on Trustee:
Quality Loan Service Corp., of Washington
19735 10th Avenue NE
Suite N-200
Poulsbo, WA 98370
(866) 645-7711

State of California)
County of San Diego)

On _____ before me, Ashley Ito, a notary public, personally appeared Sarina Castaneda, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Ashley Ito

ASHLEY ITO
Commission # 1820529
Notary Public - California
San Diego County
My Comm. Expires Oct 26, 2012

IN THE SUPERIOR COURT FOR THE COUNTY OF KING
STATE OF WASHINGTON

| | |
|---|---|
| KEVIN J. SELKOWITZ, an individual,<br><br>                                    Plaintiff<br><br>v,<br><br>LITTON LOAN SERVICING LP, a Delaware Limited Partnership; NEW CENTURY MORTGAGE CORPORATION, a California Corporation; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington Corporation ; FIRST AMERICAN TITLE INSURANCE COMPANY, a Washington Corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE Defendants 1-20,<br><br>                                    Defendants. | NO.<br><br>VERIFICATION OF COMPLAINT<br><br><br><br><br><br><br><br><br><br>*(Clerks Action Required)* |

KEVIN J. SELKOWITZ, hereby declare as follows:

1.    I am a Plaintiff named in the above-captioned matter.

2.    I have read the Summons and Complaint filed herein, know the contents thereof, and believe the same to be true.

3.    I declare, under penalty of perjury under the laws of the State of Washington, that the foregoing is true and correct to the best of my knowledge.

DATED this _25th_ day of June 2010.

_____
Kevin J. Selkowitz

VERIFICATION OF COMPLAINT
Page 1

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 - 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1

2

3

4

5

6

## IN THE SUPERIOR COURT FOR THE COUNTY OF KING
## STATE OF WASHINGTON

7

| | |
|---|---|
| KEVIN J. SELKOWITZ, an individual, | NO.  10-2-24157-4 KNT |
| Plaintiff | **NOTICE TO DEFENDANTS REGARDING DEFAULT** |
| v. | |
| LITTON LOAN SERVICING LP, a Delaware Limited Partnership; NEW CENTURY MORTGAGE CORPORATION, a California Corporation; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington Corporation ; FIRST AMERICAN TITLE INSURANCE COMPANY, a Washington Corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE Defendants 1-20, | |
| Defendants. | *(Clerks Action Required)* |

8

9

10

11

12

13

14

15

16

## NOTICE TO DEFENDANTS REGARDING DEFAULT

17

### *(RCW 38.42.050)*

18

State and Federal law provide protections to defendants who are on active duty in the

19

military service, and to their dependents.  Dependents of a service member are the service member's

20

spouse, the service member's minor child, or an individual for whom the service member provided

21

more than one-half of the individual's support for one hundred eighty days immediately preceding

22

an application for relief.

NOTICE TO DEFENDANT REGARDING DEFAULT
Page 1

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1      One protection provided is the protection against the entry of a default judgment in certain

2  circumstances.  This notice only pertains to a defendant who is a dependent of a member of the

3  National Guard or military reserve component under a call to active service for a period of more than

4  thirty consecutive days.  Other defendants in military service also have protections against default

5  judgments not covered by this notice.  If you are the dependent of a member of the National Guard

6  or a military reserve component under a call to active service for a period of more than thirty

7  consecutive days, you should notify the plaintiff or the plaintiff's attorneys in writing of your status

8  as such within twenty days of the receipt of this notice.  If you fail to do so, then a court or an

9  administrative tribunal may presume that you are not a dependent of an active duty member of the

10 National Guard or reserves, and proceed with the entry of an order of default and/or a default

11 judgment without further proof of your status.  Your response to the plaintiff or plaintiff's attorney

12 about your status does not constitute an appearance for jurisdictional purposes in any pending

13 litigation nor a waiver of your rights.

14      This notice is issued pursuant to *RCW 38.42.050(3)(a)*, effective June 7, 2006.

15      DATED this ___ day of June 2010.

16                          RICHARD LLEWELYN JONES, P.S.

17                          Richard Llewelyn Jones, WSBA# 12904
                            Attorney for Plaintiffs

NOTICE TO DEFENDANT REGARDING DEFAULT
Page 2

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322