THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KEVIN J. SELKOWITZ, an individual,<br><br>          Plaintiff<br><br>v.<br><br>LITTON LOAN SERVICING LP, a Delaware Limited Partnership; NEW CENTURY MORTGAGE CORPORATION, a California Corporation; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington Corporation ; FIRST AMERICAN TITLE INSURANCE COMPANY, a Washington Corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE Defendants 1-20,<br><br>          Defendants. | NO.  3:10-cv-05523-JCC<br><br>RESPONSE TO DEFENDANT LITTON LOAN SERVICING AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS |

  **COMES NOW** the Plaintiff, KEVIN J. SELKOWITZ, by and through his attorney, RICHARD LLEWELYN JONES, P.S., and in response to Defendants LITTON LOAN SERVICING AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S Motion to Dismiss, and offers the following:

## I.  INTRODUCTION AND RELIEF REQUESTED

  Initially, it must be noted that Plaintiff has filed a motion to remand this case to State Court on August 19, 2010. This matter was removed to this Court from King County Superior Court on July 27, 2010 by Defendant Quality Loan Services Corporation of Washington

RESPONSE TO MOTION TO DISMISS

Page 1

("QLS") pursuant to 28 U.S.C. § 1441(b). Subsequently, Plaintiff filed an Amended Complaint, which is not founded on any federal claim or right referenced under *28 U.S.C. § 1441(b)*.

Addressing Defendants' Litton Loan Servicing ("Litton") and Mortgage Electronic Registration Systems, Inc's ("MERS") motion it appears the argument is that Defendants are asserting they were following proper corporate procedures, however Defendants have failed to heed applicable law of the State of Washington in regard to the disputed actions. Plaintiff therefore moves the Court to deny Defendants' motion.

## II.    STATEMENT OF FACTS

Plaintiff executed a Deed of Trust on November 1, 2006, with Defendant First American Title Company ("FATCO") as trustee, naming MERS as purported beneficiary; the lender was identified as New Century Mortgage Corporation ("New Century").   This instrument was recorded in King County under Recordation No. 20061101000910, encumbering the Property.

As of November 1, 2006, and subsequently at all times thereafter, the Plaintiff owed to MERS no monetary or other obligation under the terms of any promissory note or other evidence of debt executed contemporaneously with the deed of trust referenced in above.

On May 12, 2010, Defendant MERS executed, as beneficiary of the security instrument, an Appointment of Successor Trustee nominating Defendant QLS as trustee.  This instrument was recorded in King County under Recordation No. 20100520000866 on May 20, 2010.

On May 27, 2010, Defendant QLS executed a Notice of Trustee's Sale in connection with the Property.  This instrument was recorded in King County under Recording Number 20100601001460 on June 1, 2010.

A search of the public records indicates that no assignment of the Deed of Trust or Note has ever been recorded.  Upon information and belief, MERS has never owned the debt secured

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

by the Deed of Trust at issue herein.  Further, Defendant MERS never obtained possession of the Promissory Note which secures the subject Deed of Trust.

### III.    STATATEMENT OF ISSUES

1.    Should the Court dismiss Plaintiff's claims for violations of the Washington Consumer Protection Act given a clear pattern of deception and misrepresentations on the part of Defendants and Plaintiff has established all other elements of the claims?

2.    Should the Court dismiss Plaintiff's claim for Defamation of Title when Defendants caused to be recorded a Notice of Trustee's Sale, absent actual legal authority to do so and Plaintiff has established all other elements of the claim?

3.    Should the Court dismiss Plaintiff's claim for Abuse of Process/Malicious Prosecution when Defendants have attempted to deprive Plaintiff of his property through the non-judicial legal process absent actual legal authority to do so and Plaintiff has established all other elements of the claim?

4.    Should the Court dismiss Plaintiff's claim for Wrongful Foreclosure when Defendants have engaged in a course of conduct in clear violation of the statutory procedures set forth in *RCW 61.24* and other legal and equitable principles?

### IV. EVIDENCE RELIED UPON

1.  Pleadings and documents filed with the court; including the Amended Complaint.

2.  This Response to Defendants' Motion.

### V.    AUTHORITY AND ARGUMENT

#### A.    Legal Standard

On a *12(b)(6)* motion to dismiss, the Court may only dismiss if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

RESPONSE TO MOTION TO DISMISS

Page 3

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

*Twombly*, 550 U.S. 544, 570 (2007). This requirement was further clarified by a Supreme Court decision that a complaint "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949(2009). The court must accept Plaintiff's factual allegations as true. *Id.* at 1949-1050.

Based upon the foregoing and the documentary evidence before the Court, Plaintiff has established, or made factual assertions that, if proved, would establish, each essential element of the claims asserted in Plaintiff's Amended Complaint.

> **B.** **Litton, QLS, and MERS have violated *RCW 61.24* and facilitated efforts to assert legal rights to which the parties are not entitled engaging wrongful foreclosure.**

MERS is named as "beneficiary" of the Deed of Trust associated with the property and dated November 11, 2006.[1]

The provisions of *RCW 61.24, et seq.* must be strictly construed, for absent judicial oversight sophisticated lenders, and their agents, are in position to exploit unsophisticated borrowers. See *In re Fritz*, 225 BR 218 (E.D. Wash. 1997). In the absence of judicial oversight there is an expectation that trustees, and the parties that have retained them, will act consistently with the procedural requirements which are meant to provide borrowers notice of the process and an opportunity to object to the process if necessary.

The Deed of Trust statutes thus strip borrowers of many of the protections available

---

[1] It should be noted that MERS was only assigned the beneficial interest in the subject Deed of Trust. At no time relevant to this cause of action was MERS assigned an interest in the Note. Accordingly, it is Plaintiff's position that MERS was never a proper "beneficiary" under *RCW 61.24.005(2)*, which provides that the beneficiary must be "the holder of the instrument or document evidencing the obligations secured by the deed of trust." Therefore, MERS never had the right to foreclose the subject Deed of Trust, since it wasn't a holder in due course of the Note that is referenced in the Deed of Trust.

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

under a mortgage. Therefore, lenders must strictly comply with the Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly construed in favor of the borrower. _Koegel v. Prudential Mut. Sav. Bank_, 51 Wn. App. 108, 752 P.2d 385 (1988). The Defendants have failed on multiple fronts to comply with the procedural requirements of _RCW 61.24_ and the entire foreclosure process in this matter to date is marked by deception and confusion that has inured to the damage and detriment of Plaintiff.

There must be no uncertainty regarding which party the obligation or covenant is due, for the borrower or third party must have such knowledge if they are to take advantage of the right to cure as set forth in _RCW 61.24.090_.  Further, the public policy underlying non-judicial foreclosures is not served by Defendants engaging in an uncertain and haphazard process.  The purposes are to (1) promote an efficient and inexpensive process, (2) provide an adequate opportunity for interested parties to prevent a wrongful foreclosure, and (3) promote stability in land titles. _Cox v. Helenius_, 103 Wn.2d 383, 693 P.2d 683 (1985).

Additionally, only those deeds that "secure the performance of an obligation of the grantor or another to the beneficiary may be foreclosed by trustee's sale." _RCW 61.24.020._ The Deed of Trust signed by the Plaintiff named MERS as the beneficiary.  It is therefore legally impossible for a foreclosure to occur under that deed, because MERS was not the obligee of the underlying Note.

The subject Deed of Trust provides, in pertinent part, as follows:

(C)     "Lender" is New Century

* * *

(D)     "MERS" is Mortgage Electronic Registration Systems, Inc., MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument. . . .

RESPONSE TO MOTION TO DISMISS

Page 5

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

Nothing in any of the documents or instruments executed on November 1, 2006 or at any time thereafter ever assigned an interest in the subject Note to MERS. To the best of Plaintiff's knowledge, the Note is still held by New Century. The reasons set forth by Defendant Litton and MERS for this state of affairs is entirely irrelevant. The law of the State of Washington is explicit on the point of which deeds may be foreclosed upon through the provisions of *RCW 61.24* and the deed in this case fails the test.

The role of MERS in the subject transaction and its legal interest in the Note and/or Deed of Trust is crucial, because if MERS had no authority to act under the subject Deed of Trust, the arguments of Litton and MERS fail.

Defendants Litton and MERS cite a recent case, *Vawter v. Quality Loan Serv.*, from the Western District of Washington in support of their contention that their actions were proper. "Defendants' allege that "no cause of action exists for wrongful foreclosure when there has been no sale." This statement is completely false, a misstatement of Washington law and an apparent attempt to misled this Court.

*RCW 61.24.130* provides, in pertinent part, as follows:

(1) Nothing contained in this chapter shall prejudice the right of the borrower, grantor, any guarantor, or any person who has an interest in, lien, or claim of lien against the property or some part thereof, to restrain, on any proper legal or equitable ground, a trustee's sale. The court shall require as a condition of granting the restraining order or injunction that the applicant pay to the clerk of the court the sums that would be due on the obligation secured by the deed of trust if the deed of trust was not being foreclosed:

(Emphasis added)

The clear import of the high-lighted language is that such action to restrain a trustee's sale "on any proper legal ground" presumes it will be done prior to the sale. Indeed, a borrower waives their right to contest a trustee's sale if they fail to pursue the pre-sale remedies provided

RESPONSE TO MOTION TO DISMISS

Page 6

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

by *RCW 61.24.130,* as noted in the case law that surrounds enforcement of the non-judicial foreclosure statute.

In the case of *Steward v. Good,* 51 Wn.App. 509, 754 P.2d 150 (1988), the Court of Appeals (Division I) states at page 515:

> Finally, the Stewards waived any right to contest the trustee's sale by their failure to pursue the **presale remedies** provided in the act. See *Koegel v. Prudential Mut. Sav. Bank,* supra at 114-16, 752 P.2d 385. The doctrine of waiver has been defined as unilateral and arises by an intentional relinquishment of a known right or "such conduct as warrants an inference of the relinquishment of such right. *Bowman v. Webster,* 44 Wash.2d 667, 669, 269 P.2d 960 (1954). The doctrine of waiver should be applied to post-sale remedies afforded the grantor/debtor pursuant to the Washington deed of trust act. The doctrine of waiver should preclude an action by a party to set aside a completed trustee's sale whenever the party (1) received notice of the right to enjoin the trustee's sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to enjoin the sale. In most cases, the statutory notices of foreclosure and trustee's sale should be sufficient to inform a party of the right to enjoin the sale. Furthermore, most substantive defenses to foreclosure arise early enough to permit the filing of a presale injunction action. Therefore, in most cases, a party's failure to bring a presale injunction action should be held to constitute a waiver of the right to contest the completed sale.

(Emphasis added)

The same conclusion was reached in the case of *In re the Marriage of Kaseburg,* 126 Wn.App. 546, 108 P.3d 1278 (2005), where the Court of Appeals (Division II) states, at page 558:

> The Deed of Trust Act sets out the procedures that must be followed to properly foreclose a debt secured by a deed of trust. Chapter 61.24 RCW. The notice of a potential foreclosure sale must comply with RCW 61.24.40. And the effect of a proper foreclosure action extinguishes the debt and transfers title to the property to the beneficiary of the deed of trust or to the successful bidder at the public foreclosure sale. RCW 61.24.100.
>
> The Act provides the sole method to contest and enjoin a foreclosure sale under RCW 61.24.130(1). A person waives the right to contest the underlying obligations on the property in foreclosure proceedings when there is no attempt to employ the **presale remedies** under RCW 61.24.130. *Steward v. Good,* 51 Wash.App. 509, 515-17, 754 P.2d 150 (1988); *see also Olsen v. Pesarik,* 118 Wash.App. 688, 693, 77 P.3d 385 (2003).

RESPONSE TO MOTION TO DISMISS

Page 7

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

As stated in *Country Express Stores, Inc. v. Sims*, <u>"[f]ailure to pursue presale</u> <u>remedies when a party has knowledge of a basis for setting aside the sale Before the sale</u> <u>constitutes a waiver."</u> <u>87 Wash.App. 741</u>, 750, <u>943 P.2d 374</u> (1997). Thus, waiver occurs "whenever the party (1) received notice of the right to enjoin the trustee's sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to enjoin the sale." *Country Express Stores*, 87 Wash.App. at 751, <u>943 P.2d 374</u> (citations omitted). Further, the court in *Country Express Stores* noted that "the statutory notices of foreclosure and trustee's sale will usually be sufficient." 87 Wash.App. at 751, <u>943 P.2d 374</u>. And in *Plein v. Lackey*, our Supreme Court recently emphasized agreement with the Act's "waiver rule" as defined in *Country Express Stores* and *Steward*. 149 Wash.2d 214, 229, <u>67 P.3d 1061</u> (2003).

(Emphasis added)

More recently, in the case of <u>*CHD, Inc. v. Boyles*</u>, 138 Wn.App. 131, 157 P.3d 415 (2007), the Court of Appeals (Division III) stated, at pages 136 – 137:

The deeds of trust act sets out the procedures that must be followed to properly foreclose a debt secured by a deed of trust." *Kaseburg*, 126 Wash.App. at 558, <u>108 P.3d</u> <u>1278</u> (citing ch. 61.24 RCW). A properly executed "foreclosure action extinguishes the debt and transfers title to the property to the beneficiary of the deed of trust or to the successful bidder at the public foreclosure sale." *Id.* (citing RCW 61.24.100).

Since the statutes allowing for nonjudicial foreclosure dispense with many protections commonly enjoyed by borrowers, "lenders must strictly comply with the statutes, and courts must strictly construe the statutes in the borrower's favor." *Amresco Independence Funding, Inc. v. SPS Props., L.L.C.,* <u>129 Wash.App. 532</u>, 537, <u>119 P.3d</u> <u>884</u> (2005). RCW 61.24.040 sets forth the procedural requirements for a nonjudicial foreclosure on a trust deed, including the contents for a notice of trustee's sale. A paragraph of the statutory notice reads:

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

RCW 61.24.040(1)(f)(IX). The sole method to contest and enjoin a foreclosure sale is to file an action to enjoin or restrain the sale in accordance with RCW 61.24.130. *Kaseburg*, 126 Wash.App. at 558, <u>108 P.3d 1278</u>.

Waiver will result when a party (1) receives notice of the right to enjoin the sale, (2) has actual or constructive knowledge of a defense to foreclosure **before the sale**, and (3) fails to bring an action to obtain a court order enjoining the sale. *Plein v. Lackey,* 149 Wash.2d 214, 227, <u>67 P.3d 1061</u> (2003); *Koegel v. Prudential Mut. Sav. Bank,* <u>51</u> <u>Wash.App. 108</u>, 114, <u>752 P.2d 385</u> (1988). "[T]he statutory notices of foreclosure and trustee's sale will usually be sufficient." *Country Express Stores, Inc. v. Sims,* <u>87</u>

RESPONSE TO MOTION TO DISMISS

Page 8

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

Wash.App. 741, 751, 943 P.2d 374 (1997) (citing *Koegel,* 51 Wash.App. at 114, 752 P.2d 385).

(Emphasis added)

What greater substantive defense to a foreclosure can there be than a violation of the very statute upon which the trustee acts?  Clearly, strict compliance with the statutory procedures for non-judicial foreclosures cannot be enforced if there is no cause of action for statutory violations of *RCW 61.24.*  Accordingly, Defendants' argument that there is no pre-sale remedy for violation of RCW 61.24 is specious and without merit.

Next, the *Vawter* Court chose to ignore the plain language *RCW 61.24* which requires the beneficiary to be the holder of the obligation.  The Plaintiff would simply urge this court to apply the definition of RCW 61.24.005(2) that beneficiary is "the holder of the instrument or document evidencing the obligations secured by the deed of trust" (emphasis added). To hold otherwise would circumvent the statutory scheme provided for in the State of Washington and provide an inaccurate record of land titles in this state. The entire point of the recording of real property transactions is to provide accurate information concerning interests and ownership, it is not to provide a free and easy means by which to facilitate the securitization of loans resulting in the recent banking crisis.

This issue has been addressed in other courts across the nation.[2]  Most recently, the Supreme Court of Kansas ruled, based upon facts similar to the ones presented here, that MERS had no interest in either the property or the obligation it secured.  A thoughtful review of the Kansas Supreme Court analysis in the matter of *Landmark Nat'l Bank v. Kesler,* Slip Opinion 98,489 (2009) is warranted:

---

[2] The U.S. Bankruptcy Court for the Western District of Washington has considered the issue tangentially in the case of *In re Jacobson,* 402 B.R. 359, 366 (Bankr. W.D. Wash. 2009).

RESPONSE TO MOTION TO DISMISS

Page 9

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

Mortgage Electronic Registration Systems, Inc. (MERS) and Sovereign Bank seek review of an opinion by our Court of Appeals holding that a nonlender is not a contingently necessary party in a mortgage foreclosure action and that due process does not require that a nonlender be allowed to intervene in a mortgage foreclosure action.

* * *

On that same date [January 16, 2007], the trial court filed an order finding that MERS was not a real party in interest and Landmark was not required to name it as a party to the foreclosure action. . . .

* * *

While this is a matter of first impression in Kansas, other jurisdictions have issued opinions on similar and related issues, and, while we do not consider those opinions binding in the current litigation, we find them to be useful guideposts in our analysis of the issues before us.

At the heart of this issue is whether the district court abused its discretion in refusing to set aside the default judgment and in refusing to join MERS as a contingently necessary party.

* * *

Sovereign is a financial institution that putatively purchased the Kesler mortgage from Millennia but did not register the transaction in Ford County. The relationship of MERS to the transaction is not subject to an easy description. One court has described MERS as follows:

"MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members." *Mortgage Elec. Reg. Sys., Inc. v. Nebraska Depart. of Banking*, 270 Neb. 529, 530, 704 N.W.2d 784 (2005).

The second mortgage designated the relationships of Kesler, MERS, and Millennia and established payment and notice obligations. That document purported to define the role played by MERS in the transaction and the contractual rights of the parties.

The document began by identifying the parties:

RESPONSE TO MOTION TO DISMISS

Page 10

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

"THIS MORTGAGE is made this 15th day of March 2005, between the Mortgagor, BOYD A. KESLER, (herein 'Borrower'), and the Mortgagee, Mortgage Electronic Registration Systems, Inc. ('MERS'), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. MILLENNIA MORTGAGE CORP., A CALIFORNIA CORPORATION is organized and existing under the laws of CALIFORNIA and has an address of 23046 AVENIDA DE LA CARLOTA #100, LAGUNA HILLS, CALIFORNIA 92653 (herein 'Lender')."

* * *

The mortgage instrument states that MERS functions "solely as nominee" for the lender and lender's successors and assigns. The word "nominee" is defined nowhere in the mortgage document, and the functional relationship between MERS and the lender is likewise not defined. In the absence of a contractual definition, the parties leave the definition to judicial interpretation.

What meaning is this court to attach to MERS's designation as nominee for Millennia? The parties appear to have defined the word in much the same way that the blind men of Indian legend described an elephant--their description depended on which part they were touching at any given time. Counsel for Sovereign stated to the trial court that MERS holds the mortgage "in street name, if you will, and our client the bank and other banks transfer these mortgages and rely on MERS to provide them with notice of foreclosures and what not." He later stated that the nominee "is the mortgagee and is holding that mortgage for somebody else." At another time he declared on the record that the nominee

"is more like a trustee or more like a corporation, a trustee that has multiple beneficiaries. Now a nominee's relationship is not a trust but if you have multiple beneficiaries you don't serve one of the beneficiaries you serve the trustee of the trust. You serve the agent of the corporation."

Counsel for the auction property purchasers stated that a nominee is "one designated to act for another as his representative in a rather limited sense." He later deemed a nominee to be "like a power of attorney."

Black's Law Dictionary defines a nominee as "[a] person designated to act in place of another, usu. in a very limited way" and as "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." Black's Law Dictionary 1076 (8th ed. 2004). This definition suggests that a nominee possesses few or no legally enforceable rights beyond those of a principal whom the nominee serves.

* * *

The legal status of a nominee, then, depends on the context of the relationship of the nominee to its principal. Various courts have interpreted the relationship of MERS and the lender as an agency relationship. See *In re Sheridan*, ___ B.R. ___, 2009 WL 631355,

RESPONSE TO MOTION TO DISMISS

Page 11

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

at *4 (Bankr. D. Idaho March 12, 2009) (MERS "acts not on its own account. Its capacity is representative."); *Mortgage Elec. Registration System, Inc. v. Southwest*, ___ Ark. ___, ___, ___ S.W.3d ___, 2009 WL 723182 (March 19, 2009) ("MERS, by the terms of the deed of trust, and its own stated purposes, was the lender's agent"); *LaSalle Bank Nat. Ass'n v. Lamy*, 2006 WL 2251721, at *2 (N.Y. Sup. 2006) (unpublished opinion) ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee.")

The relationship that MERS has to Sovereign is more akin to that of a straw man than to a party possessing all the rights given a buyer. A mortgagee and a lender have intertwined rights that defy a clear separation of interests, especially when such a purported separation relies on ambiguous contractual language. The law generally understands that a mortgagee is not distinct from a lender: a mortgagee is "[o]ne to whom property is mortgaged: the mortgage creditor, or lender." Black's Law Dictionary 1034 (8th ed. 2004). By statute, assignment of the mortgage carries with it the assignment of the debt. K.S.A. 58-2323. Although MERS asserts that, under some situations, the mortgage document purports to give it the same rights as the lender, the document consistently refers only to rights of the lender, including rights to receive notice of litigation, to collect payments, and to enforce the debt obligation. The document consistently limits MERS to acting "solely" as the nominee of the lender.

Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable.

"The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. [Citation omitted.] Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. [Citation omitted.] The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust." *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo. App. 2009).

The Missouri court found that, because MERS was not the original holder of the promissory note and because the record contained no evidence that the original holder of the note authorized MERS to transfer the note, the language of the assignment purporting to transfer the promissory note was ineffective. "MERS never held the promissory note, thus its assignment of the deed of trust to Ocwen separate from the note had no force." 284 S.W.3d at 624; see also *In re Wilhelm*, 407 B.R. 392 (Bankr. D. Idaho 2009) (standard mortgage note language does not expressly or implicitly authorize MERS to transfer the note); *In re Vargas*, 396 B.R. 511, 517 (Bankr. C.D. Cal. 2008) ("[I]f FHM has transferred the note, MERS is no longer an authorized agent of the holder unless it has a separate agency contract with the new undisclosed principal. MERS presents no evidence as to who owns the note, or of any authorization to act on behalf of the present owner."); *Saxon Mortgage Services, Inc. v. Hillery*, 2008 WL 5170180 (N.D. Cal. 2008) (unpublished opinion) ("[F]or there to be a valid assignment, there must be more than just assignment of the deed alone; the note must also be assigned.... MERS purportedly

RICHARD LLEWELYN JONES, P.S.

ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

assigned both the deed of trust and the promissory note.... However, there is no evidence of record that establishes that MERS either held the promissory note or was given the authority... to assign the note.").

What stake in the outcome of an independent action for foreclosure could MERS have? It did not lend the money to Kesler or to anyone else involved in this case. Neither Kesler nor anyone else involved in the case was required by statute or contract to pay money to MERS on the mortgage. See *Sheridan*, ___ B.R. at ___ ("MERS is not an economic 'beneficiary' under the Deed of Trust. It is owed and will collect no money from Debtors under the Note, nor will it realize the value of the Property through foreclosure of the Deed of Trust in the event the Note is not paid."). If MERS is only the mortgagee, without ownership of the mortgage instrument, it does not have an enforceable right. See *Vargas*, 396 B.R. 517 ("[w]hile the note is 'essential,' the mortgage is only 'an incident' to the note" [quoting *Carpenter v.* Longan, 16 Wall. 271, 83 U.S. 271, 275, 21 L. Ed 313 (1872)]).

\* \* \*

We note that various arguments were presented suggesting that economic policy provides independent grounds for reversing the trial court. MERS and the *amicus curiae* American Land Title Association argue that MERS provides a cost-efficient method of tracking mortgage transactions without the complications of county-by-county registration and title searches. The *amicus* suggests the statutory recording system is grounded in seventeenth-century property law that is entirely unsuited to twentieth-century financial transactions. While this may be true, the MERS system introduces its own problems and complications.

One such problem is that having a single front man, or nominee, for various financial institutions makes it difficult for mortgagors and other institutions to determine the identity of the current note holder.

"[I]t is not uncommon for notes and mortgages to be assigned, often more than once. When the role of a servicing agent acting on behalf of a mortgagee is thrown into the mix, it is no wonder that it is often difficult for unsophisticated borrowers to be certain of the identity of their lenders and mortgagees." *In re Schwartz*, 366 B.R. 265, 266 (Bankr. D. Mass. 2007).

"[T]he practices of the various MERS members, including both [the original lender] and [the mortgage purchaser], in obscuring from the public the actual ownership of a mortgage, thereby creating the opportunity for substantial abuses and prejudice to mortgagors..., should not be permitted to insulate [the mortgage purchaser] from the consequences of its actions in accepting a mortgage from [the original lender] that was already the subject of litigation in which [the original lender] erroneously represented that it had authority to act as mortgagee." *Johnson*, 2008 WL 4182397, at \*4.

The *amicus* argues that "[a] critical function performed by MERS as the mortgagee is the receipt of service of all legal process related to the property." The *amicus* makes this argument despite the mortgage clause that specifically calls for notice to be given to the

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

*lender*, not the putative mortgagee. In attempting to circumvent the statutory registration requirement for notice, MERS creates a system in which the public has no notice of who holds the obligation on a mortgage.

The Arkansas Supreme Court has noted:

"The only recorded document provides notice that [the original lender] is the lender and, therefore, MERS's principal. MERS asserts [the original lender] is not its principal. Yet no other lender recorded its interest as an assignee of [the original lender]. Permitting an agent such as MERS purports to be to step in and act without a recorded lender directing its action would wreak havoc on notice in this state." *Southwest Homes*, ___ Ark. at ___.

In any event, the legislature has established a registration requirement for parties that desire service of notice of litigation involving real property interests. It is not the duty of this court to criticize the legislature or to substitute its view on economic or social policy. *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 348, 789 P.2d 541 (1990).

This Court should adopt the reasoning of the Kansas Supreme Court. The language of the subject Deed of Trust is identical to the language used in the *Landmark* instrument. At all times relevant to this cause of action MERS was acting "solely as nominee" and was owed no obligation on the underlying Note. Under *RCW 61.24.005(2),* the definition of beneficiary is limited to those who are "the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation." *RCW 61.24.005(2).* There is no contention made by Litton or QLS that MERS ever held the underlying obligation.

Since MERS never held the underlying obligation at any time relevant to this cause of action, MERS was never a legal "beneficiary" under *RCW 61.24.005(2)* from the outset of the transaction and, therefore, lacked any legal authority to initiate foreclosure of subject Deed of Trust at any point.

Furthermore, no documentation has been provided demonstrating to whom the obligation was actually owed. To the best of Plaintiff's knowledge, New Century still remains the holder

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1   in due course under the Note.  If proper assignments of the Note have been made, they should be

2   presented.   Certainly, a diligent search of the public record maintained by the King County

3   Recorder's Office fails to reveal any assignments of the Note from New Century to any entity.

4   This is a requirement for purposes of foreclosure under *RCW 61.24.020*.

5       This is even more relevant to the underlying title as the separation of the Note from the

6   Deed of Trust renders the subject Deed of Trust unenforceable.  In other words, separation of the

7   Note from the Deed of Trust results in the Note being unsecured.  Restatement (Third) of

8   Property (Mortgages) 5.4 Comment.  This reasoning should be adopted by this Court and was

9   recognized in the *Landmark* case and was cited by a Missouri court in finding that an assignment

of deed of trust (which also purported to assign the underlying note) was of no force or effect.

10  *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619 (Mo. App. 2009).  This is the basis of

11  Plaintiff's defamation of title claim: if the obligation underlying the subject Deed of Trust has

12  been divorced from the Deed of Trust, the Deed of Trust secures nothing and is an inappropriate

13  cloud on title.

14      If QLS and Litton intend to foreclose a property non-judicially they are obligated to have

15  evidence that they are doing so on a legitimate and legal basis. QLS and Litton present no

16  evidence that their actions were anything other than wrongful and fraudulent.  Based upon the

17  foregoing QLS and Litton have knowingly and recklessly violated *RCW 61.24.*

18  **C.    Defendants have violated the Washington Consumer Protection (WCPA).**

19      The elements of a claim under Washington's Consumer Protection Act (hereinafter

20  "WCPA"*), RCW 19.86, et seq*, include the following: (1) an unfair or deceptive act or practice,

21  (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's

22  business or property, and (5) causation. *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*,

RESPONSE TO MOTION TO DISMISS

Page 15

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

105 Wash.2d 778, 719 P.2d 531 (1986).  The WCPA should be "liberally construed that its beneficial purposes may be served." *RCW 19.86.920; Short v. Demopolis*, 103 Wash.2d 52, 691 P.2d 163 (1984).

Determining whether a particular act is an unfair or deceptive act within the terms of the WCPA is a question of law for the court, if there is no factual dispute.  *Leingang v. Pierce County Med. Bureau, Inc.,* 131 Wash.2d 133, 930 P.2d 288 (1997).  Of importance to the facts of the present controversy, an unfair or deceptive act can include misrepresentations of facts related to the legal status of a debt.  *Panag v. Farmers Ins. Co. Of Washington*, 204 P.3d 885 (2009) (deceptive methods used by a collection agency to recover money on behalf of an insurance company).

In applying *Panag* to the facts of the present controversy, it appears QLS retained the services of Litton to represent QLS in the non-judicial foreclosure of Plaintiff's property.  The actions of QLS, and its agent Litton, were materially false or misleading to the extent that the purported transactions were not consistent with laws of the State of Washington and therefore failed to meet the legal standards entitling QLS to take the actions it did.

Additionally, these statements were made in connection with the purported collection of a debt and constitutes a clear violation of §807 of the Fair Debt Collection Practices Act ("FDCPA"):

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of -

RESPONSE TO MOTION TO DISMISS

Page 16

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

(A) <u>the character, amount, or legal status of any debt</u>; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) <u>The threat to take any action that cannot legally be taken or that is not intended to be taken.</u>

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to -

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) <u>The false representation or implication that accounts have been turned over to innocent purchasers for value.</u>

RESPONSE TO MOTION TO DISMISS

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

(Emphasis added)

Moreover, the misstatements of fact regarding a debt owed to MERS constitute an unfair practice under §808 of the FDCPA:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if -

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

RESPONSE TO MOTION TO DISMISS

Page 18

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

(C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

(Emphasis added)

*Panag* stands for the proposition that such statutory violation related to the collection of a debt is a *per se* unfair or deceptive act under the first element of the WCPA claim. As applied here, neither QLS, Litton, nor MERS had the right to possession of the subject real property at the time Litton and QLS threatened Plaintiff with non-judicial foreclosure of the subject property on behalf of MERS.

Whether an act occurs in trade or commerce is an issue of whether the act "directly or indirectly affect[s] the people of the State of Washington." *RCW 19.86.010(2)*. Misrepresentations concerning the legal status of a debt related to real property and the party to whom the debt is owed clearly affects the people of Washington. The court in *Panag* interpreted the WCPA broadly in order to give maximum effect to the Act in circumstances very similar to those alleged in this matter.

Among the factors set forth in *Hangman Ridge* in determining if the public interest element is met are: (1) were the alleged acts committed in the course of defendant's business? (2) are the acts part of a pattern or generalized course of conduct? (3) were repeated acts committed prior to the act involving plaintiff? (4) is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? *Hangman Ridge v. Safeco, supra.* For disputes more private in nature, courts will consider whether (1) the acts alleged were committed in the course of defendant's business? and (2) whether plaintiff and defendant

RESPONSE TO MOTION TO DISMISS

Page 19

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

occupy unequal bargaining positions?  The answer to most of these questions is an unequivocal "Yes."  The conduct alleged here is likely in substantially the same form to homeowners throughout the State of Washington.

Regardless of the ultimate answer to the above questions, the *Hangman Ridge* court stated that the "*per se* method requires a showing that a statute has been violated which contains a specific legislative declaration of public interest impact."  Among the statutes at issue is the FDCPA, which states as a declaration of purpose that is designed to "protect consumers" across the nation.  *15 USC 1692* provides as follows:

(a) Abusive practices

    There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

* * *

(e) Purposes

    It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses

(Emphasis added)

This is analogous, if not synonymous, with the public interest declaration as described in *Hangman Ridge*.  The court in *Panag* stated that "[w]hen a violation of debt collection regulations occurs, it constitutes a *per se* violation of the WCPA and the FTCA under state and federal law, reflecting the public policy significance of this industry." *Panag,* at page 897.

The injury to Plaintiff's business or property occurred in the necessity for investigation

RESPONSE TO MOTION TO DISMISS

Page 20

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

and consulting with professionals to address Defendants' wrongful collection practices and violation of *RCW 61.24, et seq.* The expenditure of out-of-pocket expenses for postage, parking, and consulting an attorney are sufficient proof of an injury under *Hangman Ridge*. *Panag* at page 902. Here, Plaintiff needed to take time off from work schedule and incurred travel expenses to consult with an attorney to address the misconduct of the Defendants.

Additionally, injury to a person's business or property is broadly construed and in some instances where "no monetary damages need be proven, and that nonquantifiable injuries, such as loss of goodwill would suffice for this element of the *Hangman Ridge* test." *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 740, 733 P.2d 208 (1987).

The acts that MERS, QLS and Litton committed that give rise to Plaintiff's claim under the WCPA are: (1) MERS, QLS and Litton facilitated a deceptive and misleading effort to wrongfully execute and record documents they knew or should have known contained false statements related to the Appointment of Successor Trustee; (2) MERS directed QLS to execute and record a Notice of Trustee's Sale that contained false statements in that no obligation of the Plaintiff was ever owed to MERS; (3) Defendants knew that their conduct amounted to wrongful foreclosure and was further in violation of the FDCPA; (4) Defendants, as a result of the above described conduct, caused substantial damage to the Plaintiff.

### D.   Defendants have committed Defamation of Title against Plaintiffs

By virtue of its recording its Notice of Trustee's Sale without the legal authority to do so, QLS and Litton defamed Plaintiff's title to his property.

Under Washington law, a claim for slander or defamation of title requires the proponent to establish, by a preponderance of the evidence, the following elements:

1.   the statements concerning the proponents title must be false;

RESPONSE TO MOTION TO DISMISS

Page 21

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

2.     the statements must be maliciously published;

3.     the statements must be spoken with reference to some pending sale or related transaction concerning the proponent's property;

4.     the proponent must suffer pecuniary loss or injury as a result of the false statements; and

5.     the statements must be such as to defeat the proponent's title.

*Lee v. Maggard*, 197 Wash. 380 (1938); *Brown v. Safeway Stores*, 94 Wn.2d 350 (1980); *Rogvig v. Douglas*, 123 Wn.2d 854 (1994).

The element of falsity is established by the recording of a document known to contain false declarations. *Rogvig v. Douglas, supra.*

The element of "malice" is established by false statements that are not made in good faith or otherwise based on a reasonable belief in the veracity of the statements. *Rogvig v. Douglas, supra.*

A proponent's proof of damages is sufficient when a reasonable basis for estimating the injured party's loss can be presented without resort to speculation or conjecture. *Rogvig v. Douglas, supra.*

Here, as noted above, QLS and Litton knew at the time it recorded its Notice of Trustee's Sale, the underlying Notice of Default, the proper issuance of which is a prerequisite to the issuance of the filing of a Notice of Trustee's Sale, was defective. See *RCW 61.24.030(7)* and *RCW 61.24.040.*

RESPONSE TO MOTION TO DISMISS

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

**E.      Defendants engaged in Abuse of Process against Plaintiff.**

As amply argued above, QLS and Litton have attempted to deprive Plaintiff of his real property through abuse of the non-judicial legal process of *RCW 61.24, et seq.*  The claim of abuse of process has been plead to preserve the claim, predicated upon a finding that the foreclosure process initiated by MERS, QLS and Litton was wrongful.  However, without proper legal authority for initiating the non-judicial foreclosure process, Defendants have threatened to deprive Plaintiff of his home. Such action clearly constitutes, if proved at time of trial, abuse of process.

**F.      Need for additional discovery**

Plaintiff has not had the opportunity to review any discovery documents that will shed additional light on the transactions at issue.  Specifically, Plaintiff has not been able to obtain copies of any and all assignments of the Note to determine who might be the holder in due course.  Such assignments, if they exist, can only be obtained through Defendants.  If the Court is inclined to favorably consider Defendants' motion, despite Plaintiff's pending Motion to Remand, Plaintiff would request the same be continued to permit discovery.

### VI.      CONCLUSION

On the basis of the foregoing, there are numerous issues of fact that remain outstanding that mitigate against entry of motion to dismiss.  These issues of fact include, without limitation: (1) who is the current holder of the Note? (2) to whom was the Note of November 1, 2006 assigned and under what conditions? (3) who was the holder of the Note when subject foreclosure process was initiated? (4) was the individual or entity that authorized the subject foreclosure process the holder of the Note at the time the authorization was given?  Given outstanding issues of fact such as these, Defendants' Motion for

RESPONSE TO MOTION TO DISMISS

Page 23

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1    Dismissal should be denied.

2         **RESPECTFULLY SUBMITTED** this 26th day of August, 2010.

3                                   RICHARD LLEWELYN JONES, P.S.

4

5                                   Richard Llewelyn Jones, WSBA No. 12904
                                    Attorney for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

RESPONSE TO MOTION TO DISMISS

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322