THE HONORABLE JOHN C. COUGHENOUR

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| KEVIN J. SELKOWITZ, an individual,<br><br>Plaintiff<br><br>v.<br><br>LITTON LOAN SERVICING LP, a Delaware Limited Partnership; NEW CENTURY MORTGAGE CORPORATION, a California Corporation; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington Corporation ; FIRST AMERICAN TITLE INSURANCE COMPANY, a Washington Corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOE Defendants 1-20,<br><br>Defendants. | NO.  3:10-cv-05523-JCC<br><br>**RESPONSE TO DEFENDANTQUALITY LOAN SERVICE'S MOTION TO DISMISS** |

**COMES NOW** the Plaintiff, KEVIN J. SELKOWITZ, by and through his attorney, RICHARD LLEWELYN JONES, P.S., and in response to Defendants QUALITY LOAN SERVICE'S Motion to Dismiss, and offers the following:

### I.   INTRODUCTION AND RELIEF REQUESTED

Initially, it must be noted that the claims for relief for Quiet Title are not applicable to defendant QLS. This matter was removed to this Court from King County Superior Court on July 27, 2010 by Defendant Quality Loan Services Corporation of Washington ("QLS")

RESPONSE TO MOTION TO DISMISS

Page 1

pursuant to 28 U.S.C. § 1441(b). Subsequently, Plaintiff filed an Amended Complaint, which is not founded on any federal claim or right referenced under *28 U.S.C. § 1441(b)*.

The Court has stayed proceedings in this matter pending its decision concerning certification of issues to the Washington Supreme Court pursuant to *RCW 2.60.030*. The ultimate resolution of the issues raised by the Court will necessarily implicate the claims against QLS, and other Defendants. Plaintiff will proceed on the basis that this Court or the Washington Court will decide those issues in Plaintiff's favor. Plaintiff therefore moves the Court to deny Defendants' motion.

## II.  **STATEMENT OF FACTS**

Plaintiff executed a Deed of Trust on November 1, 2006, with Defendant First American Title Company ("FATCO") as trustee, naming MERS as purported beneficiary; the lender was identified as New Century Mortgage Corporation ("New Century").  This instrument was recorded in King County under Recordation No. 20061101000910, encumbering the Property.

On May 12, 2010, Defendant MERS executed, as beneficiary of the security instrument, an Appointment of Successor Trustee nominating Defendant QLS as trustee.  This instrument was recorded in King County under Recordation No. 20100520000866 on May 20, 2010.

On May 27, 2010, Defendant QLS executed a Notice of Trustee's Sale in connection with the Property.  This instrument was recorded in King County under Recording Number 20100601001460 on June 1, 2010.

A search of the public records indicates that no assignment of the Deed of Trust or Note has ever been recorded.  Defendant New Century Mortgage has not appeared in this matter.

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

## III.    STATATEMENT OF ISSUES

1.    Should the Court dismiss Plaintiff's claims for violations of the Washington Consumer Protection Act given a clear pattern of deception and misrepresentations on the part of Defendants and Plaintiff has established all other elements of the claims?

2.    Should the Court dismiss Plaintiff's claim for Defamation of Title when Defendant has caused to be recorded a Notice of Trustee's Sale, absent actual legal authority to do so and Plaintiff has established all other elements of the claim?

3.    Should the Court dismiss Plaintiff's claim for Abuse of Process/Malicious Prosecution when Defendant has attempted to deprive Plaintiff of his property through the non-judicial legal process absent actual legal authority to do so and Plaintiff has established all other elements of the claim?

4.    Should the Court dismiss Plaintiff's claim for Wrongful Foreclosure when Defendants have engaged in a course of conduct in clear violation of the statutory procedures set forth in *RCW 61.24* and other legal and equitable principles?

## IV. EVIDENCE RELIED UPON

1.  Pleadings and documents filed with the court; including the Amended Complaint.

2.  This Response to Defendants' Motion.

## V.    AUTHORITY AND ARGUMENT

### A.    Legal Standard

On a *12(b)(6)* motion to dismiss, the Court may only dismiss if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requirement was further clarified by a Supreme Court decision that a complaint "has facial plausibility when the plaintiff pleads factual content that

RESPONSE TO MOTION TO DISMISS

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949(2009). The court must accept Plaintiff's factual allegations as true. *Id.* at 1949-1050.

Based upon the foregoing and the documentary evidence before the Court, Plaintiff has established, or made factual assertions that, if proved, would establish, each essential element of the claims asserted in Plaintiff's Amended Complaint.

**B.** **QLS has violated *RCW 61.24* and facilitated efforts to assert legal rights to which the parties are not entitled engaging wrongful foreclosure.**

MERS is named as "beneficiary" of the Deed of Trust associated with the property and dated November 11, 2006.[1]

The provisions of *RCW 61.24, et seq.* must be strictly construed, for absent judicial oversight sophisticated lenders, and their agents, are in position to exploit unsophisticated borrowers.   See *In re Fritz*, 225 BR 218 (E.D. Wash. 1997).  In the absence of judicial oversight there is an expectation that trustees, and the parties that have retained them, will act consistently with the procedural requirements which are meant to provide borrowers notice of the process and an opportunity to object to the process if necessary.

The Deed of Trust statutes thus strip borrowers of many of the protections available under a mortgage. Therefore, lenders must strictly comply with the Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly construed in favor of the borrower. *Koegel v. Prudential Mut. Sav. Bank*, 51 Wn. App. 108, 752 P.2d 385 (1988). The Defendant has failed on

---

[1] It should be noted that MERS was only assigned the beneficial interest in the subject Deed of Trust.  At no time relevant to this cause of action was MERS assigned an interest in the Note.  Accordingly, it is Plaintiff's position that MERS was never a proper "beneficiary" under *RCW 61.24.005(2),* which provides that the beneficiary must be "the holder of the instrument or document evidencing the obligations secured by the deed of trust." Therefore, MERS never had the right to foreclose the subject Deed of Trust, since it wasn't a holder in due course of the Note that is referenced in the Deed of Trust.

RESPONSE TO MOTION TO DISMISS

Page 4

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

multiple fronts to comply with the procedural requirements of *RCW 61.24* and the entire foreclosure process in this matter to date is marked by deception and confusion that has inured to the damage and detriment of Plaintiff.

There must be no uncertainty regarding which party the obligation or covenant is due, for the borrower or third party must have such knowledge if they are to take advantage of the right to cure as set forth in *RCW 61.24.090*.  Further, the public policy underlying non-judicial foreclosures is not served by Defendants engaging in an uncertain and haphazard process.  The purposes are to (1) promote an efficient and inexpensive process, (2) provide an adequate opportunity for interested parties to prevent a wrongful foreclosure, and (3) promote stability in land titles. *Cox v. Helenius*, 103 Wn.2d 383, 693 P.2d 683 (1985).  The obligation underlying the deed of trust in this case was owed to New Century Mortgage Corporation of California. New Century has neither appeared nor responded in this matter. It is highly questionable whether Defendant QLS can be said to be acting in good faith especially in light of RCW 61.24.030(7)(a) which requires that "trustee shall have proof that the beneficiary is the owner of any promissory note". If there is such proof why has it not been offered pursuant to either the trustee's sale or these proceedings?

Additionally, only those deeds that "secure the performance of an obligation of the grantor or another to the beneficiary may be foreclosed by trustee's sale." *RCW 61.24.020.* The Deed of Trust signed by the Plaintiff named MERS as the beneficiary.  It is therefore legally impossible for a foreclosure to occur under that deed, because MERS was not the obligee of the underlying Note.

The subject Deed of Trust provides, in pertinent part, as follows:

(C)     "Lender" is New Century

RESPONSE TO MOTION TO DISMISS

Page 5

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

* * *

(D)     "MERS" is Mortgage Electronic Registration Systems, Inc., MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument. . . .

Nothing in any of the documents or instruments executed on November 1, 2006 or at any time thereafter ever assigned an interest in the subject Note to MERS.  To the best of Plaintiff's knowledge, the Note is still held by New Century. The reasons set forth by Defendant Litton and MERS for this state of affairs is entirely irrelevant. The law of the State of Washington is explicit on the point of which deeds may be foreclosed upon through the provisions of *RCW 61.24* and the deed in this case fails the test.

Defendant cites a recent case, *Vawter v. Quality Loan Serv.*, from the Western District of Washington in support of their contention that their actions were proper. "Defendants' allege that "no cause of action exists for wrongful foreclosure when there has been no sale." This statement is completely false and a misstatement of Washington law.

*RCW 61.24.130* provides, in pertinent part, as follows:

(1) <u>Nothing contained in this chapter shall prejudice the right of the borrower, grantor, any guarantor, or any person who has an interest in, lien, or claim of lien against the property or some part thereof, to restrain, on any proper legal or equitable ground, a trustee's sale.</u> The court shall require as a condition of granting the restraining order or injunction that the applicant pay to the clerk of the court the sums that would be due on the obligation secured by the deed of trust if the deed of trust was not being foreclosed:

(Emphasis added)

The clear import of the high-lighted language is that such action to restrain a trustee's sale "on any proper legal ground" presumes it will be done prior to the sale.  Indeed, a borrower waives their right to contest a trustee's sale if they fail to pursue the pre-sale remedies provided by *RCW 61.24.130,* as noted in the case law that surrounds enforcement of the non-judicial foreclosure statute.

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

In the case of _Steward v. Good_, 51 Wn.App. 509, 754 P.2d 150 (1988), the Court of Appeals (Division I) states at page 515:

> Finally, the Stewards waived any right to contest the trustee's sale by their failure to pursue the **presale remedies** provided in the act. See _Koegel v. Prudential Mut. Sav. Bank,_ supra at 114-16, 752 P.2d 385. The doctrine of waiver has been defined as unilateral and arises by an intentional relinquishment of a known right or "such conduct as warrants an inference of the relinquishment of such right. _Bowman v. Webster,_ 44 Wash.2d 667, 669, 269 P.2d 960 (1954). The doctrine of waiver should be applied to post-sale remedies afforded the grantor/debtor pursuant to the Washington deed of trust act. The doctrine of waiver should preclude an action by a party to set aside a completed trustee's sale whenever the party (1) received notice of the right to enjoin the trustee's sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to enjoin the sale. In most cases, the statutory notices of foreclosure and trustee's sale should be sufficient to inform a party of the right to enjoin the sale. Furthermore, most substantive defenses to foreclosure arise early enough to permit the filing of a presale injunction action. Therefore, in most cases, a party's failure to bring a presale injunction action should be held to constitute a waiver of the right to contest the completed sale.

(Emphasis added)

The same conclusion was reached in the case of _In re the Marriage of Kaseburg_, 126 Wn.App. 546, 108 P.3d 1278 (2005), where the Court of Appeals (Division II) states, at page 558:

> The Deed of Trust Act sets out the procedures that must be followed to properly foreclose a debt secured by a deed of trust. Chapter 61.24 RCW. The notice of a potential foreclosure sale must comply with RCW 61.24.40. And the effect of a proper foreclosure action extinguishes the debt and transfers title to the property to the beneficiary of the deed of trust or to the successful bidder at the public foreclosure sale. RCW 61.24.100.
>
> The Act provides the sole method to contest and enjoin a foreclosure sale under RCW 61.24.130(1). A person waives the right to contest the underlying obligations on the property in foreclosure proceedings when there is no attempt to employ the **presale remedies** under RCW 61.24.130. _Steward v. Good,_ 51 Wash.App. 509, 515-17, 754 P.2d 150 (1988); _see also Olsen v. Pesarik,_ 118 Wash.App. 688, 693, 77 P.3d 385 (2003).
>
> As stated in _Country Express Stores, Inc. v. Sims,_ "[f]ailure to pursue presale remedies when a party has knowledge of a basis for setting aside the sale Before the sale constitutes a waiver." 87 Wash.App. 741, 750, 943 P.2d 374 (1997). Thus, waiver occurs "whenever the party (1) received notice of the right to enjoin the trustee's sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to enjoin the sale." _Country Express Stores,_ 87 Wash.App. at

RESPONSE TO MOTION TO DISMISS

Page 7

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

751, <u>943 P.2d 374</u> (citations omitted). Further, the court in *Country Express Stores* noted that "the statutory notices of foreclosure and trustee's sale will usually be sufficient." 87 Wash.App. at 751, <u>943 P.2d 374</u>. And in *Plein v. Lackey,* our Supreme Court recently emphasized agreement with the Act's "waiver rule" as defined in *Country Express Stores* and *Steward.* 149 Wash.2d 214, 229, <u>67 P.3d 1061</u> (2003).

(Emphasis added)

More recently, in the case of <u>*CHD, Inc. v. Boyles*</u>, 138 Wn.App. 131, 157 P.3d 415 (2007), the Court of Appeals (Division III) stated, at pages 136 – 137:

> The deeds of trust act sets out the procedures that must be followed to properly foreclose a debt secured by a deed of trust." *Kaseburg,* 126 Wash.App. at 558, <u>108 P.3d 1278</u> (citing ch. 61.24 RCW). A properly executed "foreclosure action extinguishes the debt and transfers title to the property to the beneficiary of the deed of trust or to the successful bidder at the public foreclosure sale." *Id.* (citing RCW 61.24.100).
>
> Since the statutes allowing for nonjudicial foreclosure dispense with many protections commonly enjoyed by borrowers, "lenders must strictly comply with the statutes, and courts must strictly construe the statutes in the borrower's favor." *Amresco Independence Funding, Inc. v. SPS Props., L.L.C.,* <u>129 Wash.App. 532</u>, 537, <u>119 P.3d 884</u> (2005). RCW 61.24.040 sets forth the procedural requirements for a nonjudicial foreclosure on a trust deed, including the contents for a notice of trustee's sale. A paragraph of the statutory notice reads:
>
> > Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.
>
> RCW 61.24.040(1)(f)(IX). The sole method to contest and enjoin a foreclosure sale is to file an action to enjoin or restrain the sale in accordance with RCW 61.24.130. *Kaseburg,* 126 Wash.App. at 558, <u>108 P.3d 1278</u>.
>
> Waiver will result when a party (1) receives notice of the right to enjoin the sale, (2) has actual or constructive knowledge of a defense to foreclosure **before the sale**, and (3) fails to bring an action to obtain a court order enjoining the sale. *Plein v. Lackey,* 149 Wash.2d 214, 227, <u>67 P.3d 1061</u> (2003); *Koegel v. Prudential Mut. Sav. Bank,* <u>51 Wash.App. 108</u>, 114, <u>752 P.2d 385</u> (1988). "[T]he statutory notices of foreclosure and trustee's sale will usually be sufficient." *Country Express Stores, Inc. v. Sims,* <u>87 Wash.App. 741</u>, 751, <u>943 P.2d 374</u> (1997) (citing *Koegel,* 51 Wash.App. at 114, <u>752 P.2d 385</u>).

(Emphasis added)

RESPONSE TO MOTION TO DISMISS

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

What greater substantive defense to a foreclosure can there be than a violation of the very statute upon which the trustee acts?  Clearly, strict compliance with the statutory procedures for non-judicial foreclosures cannot be enforced if there is no cause of action for statutory violations of *RCW 61.24*.    Accordingly, Defendants' argument that there is no pre-sale remedy for violation of *RCW 61.24* is specious and without merit.

Next, the *Vawter* Court chose to ignore the plain language *RCW 61.24* which requires the beneficiary to be the holder of the obligation.  The Plaintiff would simply urge this court to apply the definition of *RCW 61.24.005(2)* that beneficiary is "the holder of the instrument or document evidencing the obligations secured by the deed of trust" (emphasis added). To hold otherwise would circumvent the statutory scheme provided for in the State of Washington and provide an inaccurate record of land titles in this state. The entire point of the recording of real property transactions is to provide accurate information concerning interests and ownership, it is not to provide a free and easy means by which to facilitate the securitization of loans resulting in the recent banking crisis.

This issue has been addressed in other courts across the nation.[2]  Most forcefully, the Supreme Court of Kansas ruled, based upon facts similar to the ones presented here, that MERS had no interest in either the property or the obligation it secured.    *Landmark Nat'l Bank v. Kesler,* 192 P. 3d 177 (2008),   A thoughtful review of the reasoning of the Kansas Supreme Court concerning the legitimacy of a straw man acting in place of the true party in interest (if such party is to be found) should apply in this case as well.

---

[2] The U.S. Bankruptcy Court for the Western District of Washington has considered the issue tangentially in the case of *In re Jacobson*, 402 B.R. 359, 366 (Bankr. W.D. Wash. 2009).

RESPONSE TO MOTION TO DISMISS

Page 9

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

What stake in the outcome of an independent action for foreclosure could MERS have? It did not lend the money to Kesler or to anyone else involved in this case. Neither Kesler nor anyone else involved in the case was required by statute or contract to pay money to MERS on the mortgage. See *Sheridan*, ___ B.R. at ___ ("MERS is not an economic 'beneficiary' under the Deed of Trust. It is owed and will collect no money from Debtors under the Note, nor will it realize the value of the Property through foreclosure of the Deed of Trust in the event the Note is not paid."). If MERS is only the mortgagee, without ownership of the mortgage instrument, it does not have an enforceable right. See *Vargas*, 396 B.R. 517 ("[w]hile the note is 'essential,' the mortgage is only 'an incident' to the note" [quoting *Carpenter v.* Longan, 16 Wall. 271, 83 U.S. 271, 275, 21 L. Ed 313 (1872)]).

\* \* \*

We note that various arguments were presented suggesting that economic policy provides independent grounds for reversing the trial court. MERS and the *amicus curiae* American Land Title Association argue that MERS provides a cost-efficient method of tracking mortgage transactions without the complications of county-by-county registration and title searches. The *amicus* suggests the statutory recording system is grounded in seventeenth-century property law that is entirely unsuited to twentieth-century financial transactions. While this may be true, the MERS system introduces its own problems and complications.

One such problem is that having a single front man, or nominee, for various financial institutions makes it difficult for mortgagors and other institutions to determine the identity of the current note holder.

"[I]t is not uncommon for notes and mortgages to be assigned, often more than once. When the role of a servicing agent acting on behalf of a mortgagee is thrown into the mix, it is no wonder that it is often difficult for unsophisticated borrowers to be certain of the identity of their lenders and mortgagees." *In re Schwartz*, 366 B.R. 265, 266 (Bankr. D. Mass. 2007).

This Court should adopt the reasoning of the Kansas Supreme Court. The language of the subject Deed of Trust is identical to the language used in the *Landmark* instrument. At all times relevant to this cause of action MERS was acting "solely as nominee" and was owed no obligation on the underlying Note. Under *RCW 61.24.005(2)*, the definition of beneficiary is limited to those who are "the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different

RESPONSE TO MOTION TO DISMISS

Page 10

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

obligation." *RCW 61.24.005(2)*.  There is no contention made by Litton or QLS that MERS ever held the underlying obligation.

Since MERS never held the underlying obligation at any time relevant to this cause of action, MERS was never a legal "beneficiary" under *RCW 61.24.005(2)* from the outset of the transaction and, therefore, lacked any legal authority to initiate foreclosure of subject Deed of Trust at any point.

Furthermore, no documentation has been provided demonstrating to whom the obligation was actually owed.  To the best of Plaintiff's knowledge, New Century still remains the holder in due course under the Note.  If proper assignments of the Note have been made, they should be presented.  Certainly, a diligent search of the public record maintained by the King County Recorder's Office fails to reveal any assignments of the Note from New Century to any entity.  This is a requirement for purposes of foreclosure under *RCW 61.24.020*.

This is even more relevant to the underlying title as the separation of the Note from the Deed of Trust renders the subject Deed of Trust unenforceable.  In other words, separation of the Note from the Deed of Trust results in the Note being unsecured.  Restatement (Third) of Property (Mortgages) 5.4 Comment.  This reasoning should be adopted by this Court and was recognized in the *Landmark* case and was cited by a Missouri court in finding that an assignment of deed of trust (which also purported to assign the underlying note) was of no force or effect. *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619 (Mo. App. 2009).  This is the basis of Plaintiff's defamation of title claim: if the obligation underlying the subject Deed of Trust has been divorced from the Deed of Trust, the Deed of Trust secures nothing and is an inappropriate cloud on title.

If QLS intends to foreclose a property non-judicially they are obligated to have evidence

RESPONSE TO MOTION TO DISMISS

Page 11

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

that they are doing so on a legitimate and legal basis. QLS presents no evidence, nor has their principal appeared or answered in this matter, that their actions were anything other than wrongful and fraudulent.   Based upon the foregoing QLS have knowingly and recklessly violated *RCW 61.24.*

### C.       Defendants have violated the Washington Consumer Protection (WCPA).

The elements of a claim under Washington's Consumer Protection Act (hereinafter "WCPA"), *RCW 19.86, et seq*, include the following: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation.   *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 719 P.2d 531 (1986).   The WCPA should be "liberally construed that its beneficial purposes may be served." *RCW 19.86.920; Short v. Demopolis*, 103 Wash.2d 52, 691 P.2d 163 (1984).

Determining whether a particular act is an unfair or deceptive act within the terms of the WCPA is a question of law for the court, if there is no factual dispute.   *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wash.2d 133, 930 P.2d 288 (1997).   Of importance to the facts of the present controversy, an unfair or deceptive act can include misrepresentations of facts related to the legal status of a debt.   *Panag v. Farmers Ins. Co. Of Washington*, 204 P.3d 885 (2009) (deceptive methods used by a collection agency to recover money on behalf of an insurance company).

In applying *Panag* to the facts of the present controversy, it appears QLS was retained to conduct the non-judicial foreclosure of Plaintiff's property.  By whom is unclear from the face of the Notice of Trustee's Sale. Is the foreclosure being prosecuted by MERS or New Century?

RESPONSE TO MOTION TO DISMISS

Page 12

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

Additionally, under *RCW 61.24.030(8)* requires QLS, or the lender or its agent, to send the borrower a Notice of Default thirty (30) days prior to the recording of the notice of sale. However, the appointment of successor trustee was signed on May 12, 2010 (by Defendant MERS) while the notice of sale was recorded on June 1, 2010, less than thirty days later. Plaintiff contends that it was impossible for said notice of default to be properly issued by QLS under the statute. This is yet one more violation of the statutory scheme by one of the Defendants in this case and an unfair or deceptive act under the meaning of the act.

It is the apparent violation of Washingtons statutory scheme concering foreclosure is what gives rise to Plaintiffs CPA claims under *RCW 19.86, et seq. RCW 61.24.127(2)(f)* contains a clause specifically and unambiguously reserving to the borrower claims under *RCW 19.86*, even if no action was brought to enjoin the sale process. This provision bears a relation to this Plaintiff's claims in two respects. First, it demonstrates the Washington State legislature's belief that WCPA claims lie within the provisions of *RCW 61.24* (beyond that already contained in the price fixing provision of *RCW 61.24.135*) and the failure to comply with those provisions. Second, that regardless of whether an action for damages under *RCW 61.24* can be sustained prior to the trustee sale (an assertion the Plaintiff would dispute), a civil action to enjoin the sale process, whether temporarily or permanently, is unquestionably contemplated by the statutes.

It was the Washington State legislature's clear intent and belief that a WCPA claims lie within the provision of *RCW 61.24,* Plaintiff alleges that all Defendants have knowingly and willfully violated provisions concerning the legal definition of beneficiary and that MERS, through its own actions and the actions of the other Defendants named herein, have violated the

RESPONSE TO MOTION TO DISMISS

Page 13

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

provision requiring ownership of the note which was effective prior to the recordation of the Notice of Trustee Sale.  *RCW 61.24.130(7)(a)*  Plaintiff would assert that the language of *RCW 61.24.137* indicates Washington State legislative intent to make violations of the statute *per se* WCPA violations, however, even if this Court were not inclined to make such a finding, Plaintiff has asserted sufficient facts to support each element of the same:  (1) That Defendants engaged in an unfair or deceptive act or practice through violations of statutory provisions as noted above; (2) That the act or practice occurred in the conduct of  trade or commerce; (3) That the act or practice affected the public interest; (4) That Plaintiff was injured in either his business or property, and (5) That Defendants acts caused Plaintiffs injury.

Plaintiff believes that the statutory violations set forth provide a sufficient basis for a finding on on the first element, as the attempt to dispossess the property of an individual by a party not legally entitled to do so is unfair, and through the use of the recording process deceptive.

Under the second element the phrase "trade or commerce" includes the sale of assets or services, and any commerce directly or indirectly affecting the people of the State of Washington.  The word "assets" includes anything of value – including a person's home.  That element is satisfied under the facts of this case.

Among the factors under third element are whether the acts or practices were done in the course of Defendants business; whether the acts or practices were part of a pattern or general course of conduct of business; whether Defendants did similar acts or practices prior to the act or practice involving Plaintiff; whether there is a real and substantial potential for repetition of Defendants conduct after the act involving Plaintiff; or if only one transaction is complained of, whether many customers were affected or likely to be affected by it.  The distinction between

RESPONSE TO MOTION TO DISMISS

Page 14

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

"consumer transactions" and "private dispute" was created in *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986). Although *Hangman Ridge* does not specifically define "consumer transaction," the term tends to involve sellers who are more sophisticated than the buyer due to their large volume of transactions.  Examples of such cases given in *Hangman Ridge were Haner v. Quincy Farm Chems., Inc.*, 97 Wn.2d 753, 649 P.2d 828 (1982) (plaintiff farmer purchased defective wheat); *Lidstrand v. Silvercrest Indus.*, 28 Wn.App. 359, 623 P.2d 710 (1981) (plaintiff purchased defective mobile home); *Dempsey v. Joe Pignataro Chevrolet, Inc.,* 22 Wn.App. 384, 589 P.2d 1265 (1979) (plaintiff purchased new automobile with defective paint job); *Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wn.App. 39, 554 P.2d 349 (1976) (plaintiff purchased defective used automobile).  But given the number of MERS cases before this Court and others across the country cited herein and in Plaintiff's Responses to Defendants Motions to Dismiss, this element is easily established.

The fourth element merely requires the Plaintiff to show he has been injured to any degree and no monetary amount need be proved and proof of any injury is sufficient, even if expenses or losses caused by the violation are minimal. In *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.* Co., *supra,* the court discussed the nature of injury to "business or property."  See *RCW 19.86.020.*  Non-quantifiable injuries such as loss of good will are sufficient to establish the required injury; even minimal damages are sufficient.  *Mason v. Mortgage America, Inc.*, 114 Wn.2d 842, 792 P.2d 142 (1990) (injury as result of loss of use of property); *Sorrel v. Eagle Healthcare*, 110 Wn.App. 290, 298, 38 P.3d 1024 (2002) (injury by delay in refund of money).

The fifth element requires the Plaintiff show proximate causation between the acts of the Defendants and his injury. In *Schmidt v. Cornerstone Investments, Inc.*, 115 Wn.2d 148, 167,

RESPONSE TO MOTION TO DISMISS

Page 15

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

795 P.2d 1143 (1990), the court rejected the argument of one defendant, who had ordered an inflated real estate appraisal but had not had contact with the plaintiffs, that a "causal link must exist between plaintiffs [to whom another defendant later showed the appraisal] and himself," stating "[t]his is incorrect.  Instead, the causal link must exist between the deceptive act (the inflated appraisal) and injury suffered."  The Plaintiff asserts the deceptive acts were present at the outset of the transaction and therefore implicate all named Defendants.

Additionally, these statements were made in connection with the purported collection of a debt and constitutes a clear violation of §807 of the Fair Debt Collection Practices Act ("FDCPA")[3]:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.
>
> (2) The false representation of -
>
> (A) the character, amount, or legal status of any debt; or
>
>         ***
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
>         ***
>
> (12) The false representation or implication that accounts have been turned over to innocent purchasers for value.
>
>         ***

(Emphasis added)

---

[3] While Plaintiff has stricken his claims under the FDCPA, the conduct at issue is relevant to a determination of claims under the WCPA.

RESPONSE TO MOTION TO DISMISS

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

Moreover, the misstatements of fact regarding a debt owed to MERS constitute an unfair practice under §808 of the FDCPA:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
>
> ***
>
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if -
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> ***

(Emphasis added)

*Panag* stands for the proposition that such statutory violation related to the collection of a debt is a *per se* unfair or deceptive act under the first element of the WCPA claim. As applied here, neither QLS, Litton, nor MERS had the right to possession of the subject real property at the time Litton and QLS threatened Plaintiff with non-judicial foreclosure of the subject property on behalf of MERS.

Whether an act occurs in trade or commerce is an issue of whether the act "directly or indirectly affect[s] the people of the State of Washington." *RCW 19.86.010(2)*. Misrepresentations concerning the legal status of a debt related to real property and the party to whom the debt is owed clearly affects the people of Washington. The court in *Panag* interpreted the WCPA broadly in order to give maximum effect to the Act in circumstances very similar to those alleged in this matter.

RESPONSE TO MOTION TO DISMISS

Page 17

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

Among the factors set forth in *Hangman Ridge* in determining if the public interest element is met are: (1) were the alleged acts committed in the course of defendant's business? (2) are the acts part of a pattern or generalized course of conduct? (3) were repeated acts committed prior to the act involving plaintiff? (4) is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? *Hangman Ridge v. Safeco, supra.* For disputes more private in nature, courts will consider whether (1) the acts alleged were committed in the course of defendant's business? and (2) whether plaintiff and defendant occupy unequal bargaining positions? The answer to most of these questions is an unequivocal "Yes." The conduct alleged here is likely in substantially the same form to homeowners throughout the State of Washington.

Regardless of the ultimate answer to the above questions, the *Hangman Ridge* court stated that the "*per se* method requires a showing that a statute has been violated which contains a specific legislative declaration of public interest impact." Among the statutes at issue is the FDCPA, which states as a declaration of purpose that is designed to "protect consumers" across the nation. *15 USC 1692* provides as follows:

(a) Abusive practices

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

\* \* \*

(e) Purposes

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses

RESPONSE TO MOTION TO DISMISS

Page 18

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

(Emphasis added)

This is analogous, if not synonymous, with the public interest declaration as described in _Hangman Ridge_. The court in _Panag_ stated that "[w]hen a violation of debt collection regulations occurs, it constitutes a _per se_ violation of the WCPA and the FTCA under state and federal law, reflecting the public policy significance of this industry." _Panag,_ at page 897.

The acts that QLS committed that give rise to Plaintiff's claim under the WCPA are: (1) QLS (in concert with MERS and Litton) facilitated a deceptive and misleading effort to wrongfully execute and record documents they knew or should have known contained false statements related to the Appointment of Successor Trustee; (2) QLS (MERS directed) executed and recorded a Notice of Trustee's Sale that contained false statements in that no obligation of the Plaintiff was ever owed to MERS; (3) Defendant knew that their conduct amounted to wrongful foreclosure and was further in violation of the FDCPA; (4) Defendant, as a result of the above described conduct, caused substantial damage to the Plaintiff.

**D.    Defendants have committed Defamation of Title against Plaintiffs**

By virtue of its recording its Notice of Trustee's Sale without the legal authority to do so, QLS defamed Plaintiff's title to his property.

Under Washington law, a claim for slander or defamation of title requires the proponent to establish, by a preponderance of the evidence, the following elements:

1.    the statements concerning the proponents title must be false;
2.    the statements must be maliciously published;
3.    the statements must be spoken with reference to some pending sale or related transaction concerning the proponent's property;
4.    the proponent must suffer pecuniary loss or injury as a result of the false statements; and
5.    the statements must be such as to defeat the proponent's title.

RESPONSE TO MOTION TO DISMISS

Page 19

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

*Lee v. Maggard*, 197 Wash. 380 (1938); *Brown v. Safeway Stores*, 94 Wn.2d 350 (1980); *Rogvig v. Douglas*, 123 Wn.2d 854 (1994).

The element of falsity is established by the recording of a document known to contain false declarations. *Rogvig v. Douglas, supra.*

The element of "malice" is established by false statements that are not made in good faith or otherwise based on a reasonable belief in the veracity of the statements. *Rogvig v. Douglas, supra.*

A proponent's proof of damages is sufficient when a reasonable basis for estimating the injured party's loss can be presented without resort to speculation or conjecture. *Rogvig v. Douglas, supra.*

Here, as noted above, QLS knew at the time it recorded its Notice of Trustee's Sale, the underlying Notice of Default, the proper issuance of which is a prerequisite to the issuance of the filing of a Notice of Trustee's Sale, was defective.  See *RCW 61.24.030(7)* and *RCW 61.24.040.*

**E.**      **Defendants engaged in Abuse of Process against Plaintiff.**

As amply argued above, QLS has attempted to deprive Plaintiff of his real property through abuse of the non-judicial legal process of *RCW 61.24, et seq.*  The claim of abuse of process has been plead to preserve the claim, predicated upon a finding that the foreclosure process of QLS was wrongful.  However, without proper legal authority for initiating the non-judicial foreclosure process, Defendant have threatened to deprive Plaintiff of his home. Such action clearly constitutes, if proved at time of trial, abuse of process.

RESPONSE TO MOTION TO DISMISS

Page 20

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

## VI.   CONCLUSION

On the basis of the foregoing, there are numerous issues of fact that remain outstanding that mitigate against entry of motion to dismiss.  These issues of fact include, without limitation: (1) who is the current holder of the Note? (2) to whom was the Note of November 1, 2006 assigned and under what conditions? (3) who was the holder of the Note when subject foreclosure process was initiated? (4) was the individual or entity that authorized the subject foreclosure process the holder of the Note at the time the authorization was given? (5) does MERS have authority to act as a "beneficiary" under *RCW 61.24* and appoint successor trustees to act on behalf of undisclosed prinipals? Given outstanding issues of fact such as these, Defendants' Motion for

Dismissal should be denied.

**RESPECTFULLY SUBMITTED** this 27th day of October, 2010.

**RICHARD LLEWELYN JONES, P.S.**

Richard Llewelyn Jones, WSBA No. 12904
Attorney for Plaintiff

RESPONSE TO MOTION TO DISMISS

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322