# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

REYNALDO D. VINLUAN,

Petitioner,

v.

FIDELITY NATIONAL TITLE AND ESCROW COMPANY, a Washington Corporation; UNITED PACIFIC MORTGAGE, d/b/a AVENTUS, INC., a Washington Corporation; SAXON MORTGAGE SERVICE, INC., a Texas Corporation; OCWEN LOAN SERVICING, a Florida Corporation; DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR REGISTERED HOLDERS OF MORGAN STANLEY ABS CAPITAL INC. TRUST 2007-NC3 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-NC-3, a Delaware Corporation; REGIONAL TRUSTEE SERVICE CORPORATION, a Washington Corporation; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation; BRANDIVATION, LLC, successor to NEW CENTURY HOME MORTGAGE, an Illinois Corporation; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington Corporation,

Respondents.

NO. 85637-1

RULING DENYING REVIEW

In 2006 Reynaldo Vinluan purchased a Seattle condominium, executing a deed of trust naming Fidelity National Title and Escrow Company as trustee; Mortgage Electronic Systems, Inc. (MERS) as beneficiary; and United Pacific

611/44

Mortgage, d/b/a Aventus, Inc., as lender. MERS is a private corporation formed in 1993 by the Mortgage Bankers Association, Fannie Mae, Freddie Mac, Ginnie Mae, the Federal Housing Authority, and the Department of Veteran Affairs. Gerald Korngold, *Legal and Policy Choices in the Aftermath of the Subprime and Mortgage Financing Crisis*, 60 S. C. L. Rev. 727, 741-42 (2009). MERS provides a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. MERS becomes the mortgagee of record for participating members through assignment, and is listed as the grantee in county records. MERS is compensated for its services by fees charged to participating MERS members. The lender retains the note and the servicing rights to the mortgage, and can sell these interests without having to record the transaction in the public record. *Mortg. Elec. Registration Sys. v. Neb. Dep't of Banking Fin.*, 270 Neb. 529, 530, 704 N.W.2d 784 (2005). Thus, these transfers of interest between members are unknown to those outside the MERS system. Apparently, MERS has played a key role in permitting financial entities to securitize home loans. As is typical in these transactions, Mr. Vinluan's deed of trust recites that MERS is a separate corporation that is acting solely as the nominee for the lender and the lender's assigns, is the beneficiary under the deed, and is the legal title holder with the right to exercise all of the lender's interests under the deed.

In July 2009 Regional Trustee Services Corporation notified Mr. Vinluan that he was in default on his loan. (MERS had appointed Regional as successor trustee, although this instrument was not recorded until August 21, 2009). In August 2009 Regional gave notice of a trustee's sale. In November 2009 Regional discontinued the trustee sale, perhaps as a result of Mr. Vinluan's bankruptcy filing.

MERS later assigned the deed of trust to Deutsche Bank National Trust Company.[1] A foreclosure sale was held November 5, 2010, and Deutsche Bank acquired the property.

Meanwhile in June 2010 Mr. Vinlaun brought this King County lawsuit against Fidelity (the original trustee); United Pacific (the original lender); Saxon Mortgage Service, Inc. (a loan servicing company); Ocwen Loan Servicing (another loan servicing company); Deutsche Bank; Regional; and MERS. He alleges causes of action for quiet title, wrongful foreclosure, libel and defamation of title, malicious prosecution, violation of the Truth in Lending Act, violation of Washington's Consumer Protection Act, and violation of the Federal Fair Debt Collection Act. In November and December 2010 the various defendants moved for dismissal under CR 12(b)(6). On January 18, 2011, the superior court issued an order dismissing Saxon and Fidelity from the lawsuit without prejudice, and denying all other motions to dismiss. And purportedly pursuant to RAP 2.3(b)(4),[2] the court certified to this court the questions whether MERS is a lawful beneficiary under Washington's Deed of Trust Act, *see* RCW 61.24.005(2), and what would be the legal effect under the Deed of Trust Act of MERS acting as an unlawful beneficiary. Mr. Vinluan now seeks this court's discretionary review of the superior court's order. Deutsche Bank, Ocwen, and MERS (but not Saxon and Fidelity) have responded to this motion.

Mr. Vinluan urges this court to grant review to decide whether MERS can be considered a grantee who can control the assignment of trustees under Washington's Deed of Trust Act. His argument on that point is not well developed in

[1] The assignment says that it was made and entered into November 16, 2009, though the signature of "Vice President" Scott W. Anderson was notarized on April 5, 2010. This instrument was recorded April 21, 2010.

[2] RAP 2.3(b)(4) permits an appellate court to accept review of an act of the superior court if "[t]he superior court has certified, or ... all parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is a substantial ground for a difference of opinion and ... immediate review of the order may materially advance the ultimate termination of the litigation."

his motion, but it stems from the statutory definition of "beneficiary" found in RCW 61.24.005(2): "'Beneficiary' means the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation." Mr. Vinluan seems to contend that the "instrument ... evidencing the obligations" in this case is the note he gave his lender, United Pacific, and that MERS has never been the holder of that note and United Pacific has the right to payments under the note. The note itself identifies United Pacific as the note holder, United Pacific has the right to payments on the note, the note says the deed of trust secures the rights of the note holder, and the note says that the lender may invoke any remedies permitted by the deed of trust. Accordingly, the argument goes, MERS has no beneficial interest in the deed of trust, and thus cannot assign rights and interests that it does not have. The contrary argument, though not much discussed by the parties, would be that the law ought to permit assignment of some of the lender's rights to a nominee such as MERS.

I agree with Mr. Vinluan that whether MERS can be a deed of trust beneficiary under Washington law is an important issue that deserves resolution, probably by this court. It appears that there is considerable ongoing foreclosure litigation on the point in both state and federal courts, with no authority from this court of the Court of Appeals to guide those decisions.[3] But I am not convinced that this motion presents a viable vehicle for deciding that question.

A party may seek discretionary review of any "act" of the superior court not subject to appeal. RAP 2.3(a). A basic requisite of appellate review, recognized in

[3] The United States District Court for the Western District of Washington had contemplated petitioning this court to determine this state law question under the Federal Court Local Law Certificate Procedure Act. *See* RAP 16.16. But after learning of the superior court's certification of the issues in this case, the court instead stayed its cases pending a decision of this court whether to grant this motion for discretionary review. *Selkowitz v. Litton-Loan Servicing*, Cause No. C10-5523; *Bain v. One West Bank F.S.B.*, Cause No. 09-0149.

Washington very early on, is that the party seeking review be aggrieved of the lower court's ruling. *See* RAP 3.1 ("Only an aggrieved party may seek review by the appellate court.") An aggrieved party is one whose proprietary, pecuniary, or personal rights are substantially affected by the lower court's decision. *State v. Watson*, 155 Wn.2d 574, 582, 122 P.3d 903 (2005); *State v. Taylor*, 150 Wn.2d 599, 80 P.3d 605 (2003) (personal right or pecuniary interest). Ordinarily, mere disagreement with the lower court's reasoning does not make one aggrieved of the court's decision. *City of Tacoma v. Taxpayers of City of Tacoma*, 108 Wn.2d 679, 685, 743 P.2d 793 (1987). The mere fact that one may be hurt in his feelings, or be disappointed over a certain result does not entitle him to appeal. *State v. Taylor*, 114 Wn. App. 124, 56 P.3d 600 (2002). Generally, a party is not aggrieved of a decision in its favor, and cannot properly seek review of such a decision. *Paich v. N. Pac. Ry. Co.*, 88 Wash. 163, 152 P. 719 (1915). While this court recently held that RAP 3.1 could be waived to address a clear error in published Court of Appeals reasoning having sweeping implications, *Watson*, 155 Wn.2d at 577-78, Mr. Vinlaun has not demonstrated any error affecting his personal or pecuniary interests. As noted, the superior court's order dismisses defendants Saxon and Fidelity from the lawsuit without prejudice, but declined to dismiss the other defendants, including MERS. Nothing in the record reveals the court's reasoning, and the parties' pleadings to this court are not instructive on the point.

During oral argument I asked Mr. Vinluan's counsel why the superior court dismissed Saxon and Fidelity from the lawsuit without prejudice, and whether Mr. Vinluan can be considered an aggrieved party of the decision declining to dismiss the remaining defendants, including MERS. Counsel responded the he could not speculate why Saxon and Fidelity were dismissed or why the court did so without prejudice, and seemingly that the trial court's certification of the questions involving MERS pursuant

to RAP 2.3(b)(4) means that his client need not be aggrieved in order to seek a decision by this court on those questions.

I asked the parties to provide me with further argument on the aggrieved party question by way of supplemental memoranda, which they have done. Mr. Vinluan reiterates that he does not know why Saxon and Fidelity were dismissed without prejudice. Respondents point out that Saxon (a prior loan servicer) and Fidelity (the prior trustee) did not obtain an interest in Mr. Vinluan's deed of trust through MERS, and suggest that Saxon and Fidelity were dismissed because there was insufficient allegations of wrongdoing in the complaint to state a viable claim against them. They posit that Mr. Vinluan did not seek review of those dismissals, but only of those portions of the decision that are beneficial to him. They urge that he may not do so, since he is not aggrieved of the court's decision in that regard.

Mr. Vinluan seems to maintain that he need not be aggrieved in order to seek review under RAP 2.3(b)(4), despite the plain wording of RAP 3.1. He notes that when subsection (4) was added to the rule in 1998 the drafters said it parallels a similar provision allowing federal courts to certify to this court controlling questions of state law. *See* RAP 16.16; RCW 2.60.010 *et seq*. Under that rule the court will decide a question of state law even though the federal court has not yet decided the question.

But I am not convinced that RAP 2.3(b)(4) was meant to create a method whereby a superior court can certify a legal question to this court for resolution without first having decided that question. As noted, a party may seek discretionary review of any "act" of the superior court not subject to appeal. RAP 2.3(a). But it is unclear whether the superior court has even acted on the question of MERS's authority under the Deed of Trust Act, let alone to Mr. Vinluan's detriment.

Moreover, RAP 2.3(b)(4) has never been employed by this court in the manner suggested by Mr. Vinluan. Rather, the court has granted discretionary review of superior court decisions pursuant to RAP 2.3(b)(4) in several instances, but only in cases where the superior court had actually decided the question in the first instance. (Most such decisions were made by me or the court's prior commissioner, though some were made by the justices.) My review of the published caselaw citing the rule revealed no decision holding, or even suggesting, that the rule operates to permit a superior court to certify a question to an appellate court without first having decided the question. Rather, in each case the court granted discretionary review to review an order deciding the question. Here, the trial court's order did not express its views on the "certified" questions, or explain whether or how its views on the questions affected the decision to dismiss Saxon and Fidelity but not United Pacific, Ocwen, Deutsche Bank, Regional, or MERS. The court's reasoning is not sufficiently known or concrete at this point to allow for meaningful review. And it must be remembered that this court's role in such matters is that of a reviewing court, not a court of original jurisdiction.

Mr. Vinluan argues alternatively that he is aggrieved of the order insofar as it dismisses Saxon and Fidelity. But he acknowledges that he does not know why the court dismissed those defendants, and he raises no issue that might obtain their reinstatement. Rather, he only asks the court to decide the issues relating to MERS and its authority to act as a beneficiary under the deed of trust. But on those questions he apparently obtained no ruling from the trial court, or a ruling to his benefit.

An appellate court decision on whether MERS can be a proper beneficiary under Washington's Deed of Trust Act would be helpful in resolving lawsuits challenging foreclosure or attempted foreclosures. But this motion is not a proper

vehicle for deciding that question. Accordingly, the motion for discretionary review is denied.

COMMISSIONER

April 25, 2011